**In re AIRLIFT INTERNATIONAL, INC., Debtor.**

**William D. SEIDLE, Trustee, Counterplaintiff,**

**v.**

**UNITED STATES of America, Counterdefendant.**

**Bankruptcy No. 81–00846–BKC–SMW. Adv. No. 89–0014–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

March 21, 1989.

Timothy J. Norris, Weil, Gotshal & Manges, Robert T. Kofman, Stearns, Weaver, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for debtor.

Mark Stier, Washington, D.C., for U.S. Justice Dept., I.R.S.

## ORDER ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

SIDNEY M. WEAVER, Bankruptcy Judge.

This matter came before the Court for hearing on March 3, 1989, at 9:30 a.m. (1) for trial of the Trustee's Objection to Allowance of Administration and Priority Claims 3152 and 3153 filed by the Internal Revenue Service and Counterclaim for Equitable Subordination (the "Objection and Counterclaim") filed by William D. Seidle (the "Trustee"), the trustee of the debtor's estate, with respect to certain claims filed

by the Internal Revenue Service ("IRS") associated with alleged excise taxes due because of the failure of Airlift International, Inc. ("Airlift" or the "Debtor"), to meet minimum funding standards in connection with contributions due to a) the Fixed Retirement Plan for Pilots of Airlift (the "A Plan"), and b) the Variable Annuity Plan for Pilots of Airlift (the "B Plan"); and (2) the Trustee's Motion for Summary Judgment (the "Motion").

## I.

### BACKGROUND AND PROCEDURAL HISTORY

As more particularly set forth in the Court's opinion in *In Re Airlift Int'l, Inc.*, No. 81–00846–BKC–SMW (Bankr.S.D.Fla. July 11, 1985) (also referred to as the *"PBGC Decision"*), when Airlift filed its petition for relief under Chapter 11 of the Bankruptcy Code on June 4, 1981, Airlift maintained two pension plans, the A Plan and B Plan (collectively the "Plans"), as part of the then-existing collective bargaining agreement between the Debtor and the Air Line Pilots Association ("ALPA"). The record reflects that at no time after the filing of the bankruptcy petition were the Airlift pilots, collectively holding very substantial claims against the Airlift estate, led to believe that they would accrue any additional pension benefits from continuing to perform services. The record demonstrates that the Airlift pilots were on notice that there would be no further accrual of pension benefits.

Because of Airlift's financial condition, Airlift failed to meet the minimum funding standards for both Plans for the plan year ending June 30, 1981, subjecting Airlift to potential liability under 26 U.S.C. § 4971. IRC section 4971 imposes on an employer who maintains a qualified retirement plan subject to the minimum funding requirements a tax of five percent (referred to as "first tier tax") of the amount of the "accumulated funding deficiency" determined as of the end of the plan year. If the accumulated funding deficiency is not corrected within a certain period, IRC section 4971(b) imposes a tax (referred to as "second tier

tax") equal to 100 percent of the accumulated funding deficiency. The IRS denied Airlift's request as to a waiver of the first tier tax provided under IRC section 4971(a), but granted the waiver request as to the 100 percent second tier tax prescribed by IRC section 4971(b).

On June 15, 1984, the Trustee sought court approval of the rejection of the collective bargaining agreement with ALPA and all the Debtor's obligations under the attendant pension plans. The record reflects that both the PBGC and the IRS were given notice of the Trustee's motion. The PBGC objected to Trustee's rejection motion, but the IRS did not do so. On September 17, 1984, this Court entered an Order approving the rejection of the collective bargaining agreement and its attendant pension plans, including the obligations arising thereunder.

Following the rejection of the pension plans, the PBGC sought administrative expense priority for its claims including those for unpaid contributions due pursuant to ERISA in regard to Plan A, among other claims. On July 11, 1985, this Court entered an Order disallowing the PBGC's administrative priority claims on the grounds that rejection of the collective bargaining agreement relegated any post-petition funding obligations which may have accrued to pre-petition status by virtue of 11 U.S.C. § 502(g), and that any post-petition funding obligation was not essential to preserving the estate. The PBGC filed an appeal to the District Court which was subsequently dismissed on procedural grounds.

On August 30, 1988, the IRS filed a Request for Payment of Internal Revenue Taxes (Form 6338–A), amending and superseding the IRS' previous two amendments to its proof of claim (Claim Numbers 3152 and 3153), claiming, among other things, an administrative expense for taxes and accrued interest with respect to Plan A for the plan year ending March 25, 1982 and with respect to Plan B for the plan years ending June 30, 1982–86. The IRS also filed a proof of claim for taxes due with respect to both Plans for the plan year

ending June 30, 1981, claiming an unsecured priority status under section 507(a)(6)[1] of the Bankruptcy Code. After the action had been set on the trial calendar, the IRS filed an amended claim contending the entire amount claimed was entitled to administrative expense priority (Claim Number 3551). At the hearing on the Trustee's motion for summary judgment, the Court permitted the IRS' tardy amendment and deemed the Trustee's Objection and Counterclaim amended to address the IRS' last amended claim (Claim Number 3551).[2]

## II.

## DISCUSSION

The issue before the Court is whether the IRS' Claim Number 3551 for excise taxes and interest is entitled to administrative priority under the Bankruptcy Code. The claim is not entitled to the priority being sought for three independent reasons. First, the claim is not for post-petition taxes because, as a matter of law, the rejection of the collective bargaining agreement and its attendant pension plans terminated the Plans prior to the filing of the bankruptcy petition and relegated to pre-petition status any obligation arising under the Plans pursuant to section 502(g). Any contrary argument advanced by the IRS is barred by the doctrine of collateral estoppel. Second, the IRS' claim is not for actual, necessary costs and expenses of preserving the estate. 11 U.S.C. § 503(b)(1)(A). As recognized in this Court's prior decision, which the IRS cannot now collaterally attack, any funding obligations accruing post-petition are attributable to services rendered pre-petition. Finally, the IRS' claim is punitive in nature; thus, the underlying liability does not qualify as a tax for bankruptcy purposes. Further, the Court grants the Trustee's request to have the IRS' claim subordinated pursuant to section 510(c) on the ground that it would be inequitable to allow the claim, especially in light of the punitive purpose behind the IRS' claim and the fact that the failure to subordinate the IRS' claim would harm Airlift's innocent creditors.

A. *Rejection of the Collective Bargaining Agreement and Pension Plans Effected a Pre–Petition Termination of the Plans by Operation of Law; Therefore, Any Tax Accruing on the Debtor's Failure to Fund the Plans Was Incurred Prior to the Estate's Existence*

For a tax to be granted administrative expense status, it must be incurred post-petition. *In re Overly–Hautz Co.*, 57 B.R. 932 (Bankr.N.D.Ohio 1986), *aff'd*, 81 B.R. 434 (N.D.Ohio 1987); *In re Davidson Lumber Co.*, 47 B.R. 597 (Bankr.S.D.Fla. 1985). The IRS' claim for alleged excise taxes was relegated to pre-petition status when this Court approved the Trustee's rejection of the collective bargaining agreement and its attendant pension plans by operation of section 502(g). As this Court stated when it approved the rejection of the collective bargaining agreement, "the rejection of the ALPA collective bargaining agreement effectively rejected the Debtor's obligation to continue funding the pension plans. Accordingly, any post-petition funding obligations which may have accrued under ERISA's minimum funding standards have been relegated to pre-petition status by virtue of 11 U.S.C. § 502(g)." *PBGC Division*, slip op. at 6 (footnote omitted). *See also In re Bastian Co., Inc.*, 45 B.R. 717 (Bankr.W.D.N.Y.1985). Because the estate did not incur the alleged tax liability, the IRS' claim cannot be given administrative expense priority.

---

**1.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 358 (1984), renumbered section 507(a)(6) as section 507(a)(7). Because this amendment applies only to cases filed 90 days after July 10, 1984, and this case was filed in 1981, section 507(a)(6) will be referred to as the section existed or was in force before the 1984 amendment.

**2.** Claim Number 3551 includes a claim for post-petition withholding taxes in the sum of $563.74 to which the Trustee did not object and which, therefore, will be allowed as an expense of administration.

B. *The Doctrine of Collateral Estoppel Bars the IRS From Denying that the Rejection of the Pension Plans Relegated Any Obligation Occurring Thereunder to Pre–Petition Status*

■ The doctrine of collateral estoppel also bars the IRS from denying the effect of the rejection of the ALPA collective bargaining agreement and its pension plans. For a court to apply collateral estoppel, the following conditions must exist:

1. The issue sought to be precluded must be the same as that involved in the prior action;

2. The issue must have been actually litigated;

3. It must have been determined by valid and final judgment; and

4. The determination must have been essential to the prior judgment.

*In re Coan,* 72 B.R. 483, 485 (Bankr.M.D. Fla.1987); *see also United States v. Stauffer Chem. Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

In this case, all of the prerequisites for the application of collateral estoppel exist. First, the effect given to the rejection of the collective bargaining agreement was the determinative issue in both the *PBGC decision* and in this case. Second, the issue regarding the effect of the rejection of the collective bargaining agreement was litigated. Third, the issue was determined by a valid, final judgment. Finally, the determination of the effect of the collective bargaining agreement was one of the two bases on which this Court decided the case, thus, fulfilling the last requirement that the determination was essential.

Furthermore, the PBGC and the IRS are related entities. *See N.L.R.B. v. Donna–Lee Sportswear Co., Inc.,* 836 F.2d 31 (1st Cir.1987). Generally, litigation by one governmental agency binds another agency of the same government. Wright & Miller, Federal Prac. & Proc. § 4458 (1981). The PBGC and the IRS are related governmental entities. The Secretary of the Treasury, who is responsible for administering and enforcing the Internal Revenue Code, sits on the Board governing the PBGC.

*See* 29 U.S.C. § 1302; 26 U.S.C. § 7801. The IRS, like the PBGC before it, seeks administrative expense priority for liability based on Airlift's failure to fund the pension plans; therefore, the interests of the PBGC and the IRS are closely identified, making it incongruous not to bind the IRS to the PGBC decision. *See Donna–Lee Sportswear Co.* Further, the Trustee was a party to the action resulting in the PBGC decision and is a party to this action. Thus, this is an appropriate case to apply the doctrine of collateral estoppel against the IRS, *see Stauffer Chem. Co.,* to preclude the IRS from denying that the effect of the rejection of the collective bargaining agreement was to relegate its liability to pre-petition status. On the basis of the effect of the rejection of the plans alone, the IRS' claim is not entitled to administrative expense priority.

C. *The IRS' Claim Does Not Represent a Debt Incurred Post–Petition to the Benefit of the Estate*

■ Additionally, the Court concludes that the IRS' claim is not entitled to administrative expense priority because the claim does not represent "the actual, necessary costs and expenses of preserving the estate...." § 503(b)(1)(A). *See Overly–Hautz Co.; United States v. Redmond,* 36 B.R. 932 (D.Kan.1984). To be entitled to priority under section 503(b)(1)(A), the claim must: 1) be based on post-petition debt; *In re Keegan Utility Contractors, Inc.,* 70 B.R. 87 (W.D.N.Y.1987); 2) be the result of a transaction between the claimant and trustee or debtor-in-possession, *see In re Mammoth Mart,* 536 F.2d 950 (1st Cir.1976) (construing predecessor of § 503(b)(1)(A)); and 3) represent a debt incurred to the benefit of the estate, *In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984); *Mammoth; Keegan.*

The IRS' claim fails all of the determinative factors. First, the liability did not arise post-petition because the rejection of the collective bargaining agreement relegated any obligation under the pension plans, which encompasses the IRS' claim, to pre-petition status. The IRS' claim fails

the second prong of the test because the "tax" did not arise from a transaction between the IRS and the Trustee, or prior to the Trustee's appointment, between the IRS and the Debtor-in-Possession. More importantly, the "tax" does not benefit or preserve the estate. The *PBGC Decision* recognized that the ERISA funding obligations were attributable to services performed pre-petition.

The Court finds that the tax imposed to penalize the employer for failure to make the ERISA funding contributions, like the ERISA post-petition funding obligation itself, cannot be essential to the estate's preservation. Moreover, because the issue of the benefit to the estate was contested by the parties and served as one of the two grounds for deciding that the PBGC's claims were not entitled to administrative expense priority, the doctrine of collateral estoppel also precludes the IRS from relitigating this issue. (See *supra* section regarding the preclusive effect of the *PBGC Decision*.)

D. *The Liability Underlying the IRS' Claim is Not a Tax as Defined by Bankruptcy Law Because the Liability is Punitive in Nature*

■ A second independent ground for ruling that the IRS' claim is not entitled to administrative expense priority rests in the recognition that the liability underlying the IRS' claim is not a tax as defined by bankruptcy law because the liability is punitive in nature. The determination of whether an excise tax under IRC section 4971 is a penalty, and not a tax, has been decided against the IRS in *In re Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bankr.N.D.Ohio 1987), which reasoning the Court adopts. Although *Mansfield* addresses the issue of whether the excise tax under IRC section 4971 is a tax for determining unsecured priority status, the Court concludes that the same logic applies to determine whether a tax is to be afforded administrative expense priority under section 503(b)(1).

Notwithstanding the label given to the taxes claimed under IRC section 4971, the IRS' claim is neither for a tax nor tax penalty allowable as an administrative expense priority under section 503(b)(1) for bankruptcy purposes. Merely because a statute designates a liability as a tax does not mean it is such for all purposes. *In re Unified Control Sys. Inc.*, 586 F.2d 1036, 1037 (5th Cir.1978); *Farrell v. United States*, 484 F.Supp. 1097 (E.D.Ark.1980); *In re Kline*, 403 F.Supp. 974 (D.Md.1975), aff'd, 547 F.2d 823 (4th Cir.1977); *Mansfield*. For bankruptcy purposes, the United States Supreme Court defined taxes as "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying expenses of government or undertakings authorized by it." *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). A four-part test has evolved for determining whether a claim is a tax for bankruptcy purposes:

1. An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

2. Imposed by, or under authority of the legislature;

3. For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and

4. Under the police or taxing power of the [governmental unit].

*See County Sanitation Dist. No. 2 v. Lorber Indus. (In Re Lorber Indus.)*, 675 F.2d 1062, 1066 (9th Cir.1982); *Mansfield*, 80 B.R. at 398; *E.A. Nord Co. v. State of Wash., Dept. of Labor & Indus. (In re E.A. Nord Co.)*, 75 B.R. 634, 636 (W.D. Wash.1987).

In this case, as in *Mansfield*, the third prong of the test is determinative. " 'A tax is an enforced contribution to provide for the support of government', whereas a penalty 'is an exaction imposed by statute as punishment for an unlawful act.' " *Mansfield*, 80 B.R. at 398 (quoting *United States v. La Franca*, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931)). The legislative history clearly reflects the punitive purpose of section 4971:

The bill also provides new and more effective *penalties* where employers fail to

meet the funding standards. In the past, an attempt has been made to enforce the relatively weak funding standards existing under present law by providing for immediate vesting of the employees' rights, to the extent funded, under plans which do not meet these standards. This procedure, however, has proved to be defective since it does not directly *penalize* those responsible for the underfunding. For this reason, the [committee] bill places the obligation for funding and the *penalty* for underfunding on the person on whom it belongs-namely, the employer.

H.R.Rep. No. 807, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4694; *see also* S.Rep. No. 383, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4909. (Emphasis supplied.)

Thus, based on the punitive intent behind the enactment of IRC section 4971, the Court rules that the IRS' claim constitutes a penalty and is not a tax for bankruptcy purposes. *Mansfield.* The Court also concludes that the IRS' claim does not fall within the purview of Section 503(b)(1)(C) which affords a penalty *"relating to a tax of a kind specified in subparagraph (B)"* administrative priority. § 503(b)(1)(C) (emphasis added). Thus, the IRS' claim is not entitled to administrative expense priority as either a tax or a tax penalty.

### III.

### THE IRS' CLAIM IS SUBORDINATED TO THE CLAIMS OF GENERAL UNSECURED CREDITORS UNDER SECTION 510(c).

■ The Court rules that IRS' claim is subordinated to the claims of the general creditors of the estate under section 510(c) because equity demands it. Section 510(c) provides that the court may subordinate in whole or in part claims under principles of equitable subordination. Although courts generally apply equitable subordination when the creditor has engaged in fraud or misconduct, *In re Mobile Steel Co.,* 563 F.2d 692 (5th Cir.1977), courts have subordinated claims, such as tax penalties or

punitive damage claims, because of their nature. *See, e.g., In re GAC Corp.,* 681 F.2d 1295 (11th Cir.1982); *In re Merwede,* 84 B.R. 11, 13 (Bankr.D.Conn.1988); *Mansfield,* 80 B.R. at 401; *In re Quality Sign Co., Inc.,* 51 B.R. 351 (Bankr.S.D.Ind.1985); *In re Colin,* 44 B.R. 806 (Bankr.S.D.N.Y. 1984). The legislative history of section 510(c) supports the conclusion that claims may be subordinated solely by virtue of their nature. *See* 124 CONG.REC. 11,095 (daily ed. Sept. 28, 1978); 17,412 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini), *reprinted in* 1978 U.S. Code Cong. & Admin.News 6436, 6505, 6521; *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6315.

Because punitive or penalty damage claims are imposed to deter future wrongdoing, the Court concludes that it is inequitable to have the wrongdoer's estate pay to the detriment of its innocent creditors. *Merwede; Mansfield; Colin.* "The clear implication of [section 510(c)(1)] and its legislative history is that a claim for punitive damages should not be allowed to share *in pari passu* with other general unsecured creditors for to do so would result in innocent creditors paying for the debtor's alleged misconduct." *Colin,* 44 B.R. at 810.

The Court finds that the *Mansfield* decision, construing an excise tax imposed under an identical IRS Code section as in this case, controls this case. In *Mansfield,* the bankruptcy court recognized its equitable power under section 510(c) to subordinate such a claim as the IRS presently advances. *See also Colin.* For both the *Mansfield* and *Colin* courts, the overriding concern was that the penalty, whether in the guise of an excise tax or a punitive damage claim, not be permitted to punish innocent creditors for the wrongs of the debtor. As discussed previously, the IRS' claim is based on a tax which has as its stated purpose the punishment of the employer for failure to fund pension plans. The *Mansfield* and *Colin* courts' concern for protecting the innocent creditors ap-

plies with equal force here, especially when considering that the record reflects that employees constitute a substantial group of Airlift's creditors. If the IRS' claim is not subordinated, the employees, the intended beneficiaries of the pension plans, will lose to a tax imposed because of their defunct pension plans; the employees are the victims, having gained nothing in this exercise: no continuing pension plans, and smaller payment from the bankruptcy estate. The Court rules that equity demands the IRS' claim be subordinated.

## IV.

## CONCLUSION

The foregoing analysis leads the Court to conclude that Claim Number 3551 is not entitled to priority as an administrative expense and must be subordinated to the claims of the general unsecured creditors. Accordingly, it is

ORDERED that the Trustee's Motion for Summary Judgment is granted.

DONE AND ORDERED.