**SCHULTZ BROADWAY INN, Appellee,**

v.

**UNITED STATES of America,
Appellant.**

No. 89–2380.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1990.

Decided Aug. 21, 1990.

Gary D. Gray, Washington, D.C., for appellant.

Jerry W. Venters, Jefferson City, Mo., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT and ROSS, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

In this liquidation proceeding under chapter 11 of the Bankruptcy Code,[1] the United States appeals the district court[2] judgment subordinating the Government's claim for a non-pecuniary loss tax penalty to the claims for actual losses of other general unsecured creditors. The Government contends that (1) under a proper construction of the Bankruptcy Code, governmental claims for non-pecuniary loss tax penalties should share pro rata with the claims of other general unsecured creditors, and (2) the penalty claims cannot be subordinated without evidence that the Government acted in bad faith. We reject these contentions and affirm.

## I. BACKGROUND

Beginning in 1982, Schultz Broadway, a closely held corporation, owned and operated a motel in Columbia, Missouri. In August 1987, Schultz Broadway sought relief under chapter 11 of the Bankruptcy Code, *see* 11 U.S.C. §§ 1101–1174 (1988). In December 1987, with bankruptcy court approval, Schultz Broadway sold the motel property, the corporation's most significant asset. Soon thereafter, Schultz Broadway's officers proposed a plan to liquidate the corporation.

In May 1988, the Government filed a Proof of Claim for pre-petition tax liabilities. The Government's Proof of Claim included a $58,318.80 negligence penalty that the Internal Revenue Service assessed against Schultz Broadway for underpayment of taxes pursuant to 26 U.S.C.

§ 6653(a) (Supp. V 1987) (amended 1988). In the proceedings before the bankruptcy court, the Government apparently conceded that the negligence penalty was punitive in nature and not intended to compensate the Government for actual losses. Nevertheless, the Government took the position that the negligence penalty should be paid pro rata with the claims for actual losses of other general unsecured creditors.

Schultz Broadway objected to a pro rata distribution and requested the bankruptcy court to determine the priority of payment for the Government's tax penalty claim. In a judgment entered August 9, 1988, the bankruptcy court subordinated the Government's negligence penalty to the claims of the other general unsecured creditors. For its ruling, the bankruptcy court relied both on statutory policy and the equitable subordination provisions of section 510(c)(1) of the Bankruptcy Code. The district court adopted the bankruptcy court's memorandum opinion and affirmed. The Government's appeal followed.

## II. DISCUSSION

■ The Government's arguments in support of reversal rest solely on its interpretation of the applicable Bankruptcy Code provisions. First, the Government contends that the district court lacked authority to subordinate the Government's penalty claim to the claims of other general unsecured creditors because Congress did not intend section 510(c)(1) to apply to the tax claims of governmental units. We disagree.

We note at the outset that the Seventh Circuit, the only circuit to address this issue, has recently construed section 510(c)(1) to permit subordination of governmental claims for non-pecuniary loss tax penalties in liquidating chapter 11 proceedings. *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1249–50 (7th Cir.1990), *aff'g* 98 B.R.

---

**1.** Unless otherwise indicated, "Bankruptcy Code" refers to the Bankruptcy Reform Act of 1978, as subsequently amended.

**2.** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

343 (N.D.Ill.1989).[3] Bankruptcy courts addressing this issue have reached the same conclusion. *See, e.g., Seidle v. United States (In re Airlift Int'l, Inc.),* 97 B.R. 664, 670–71 (Bankr.S.D.Fla.1989); *In re Merwede,* 84 B.R. 11, 12–14 (Bankr.D.Conn. 1988); *In re Mansfield Tire & Rubber Co.,* 80 B.R. 395, 400–02 (Bankr.N.D.Ohio 1987). Having conducted our own review of the legislative history, we agree with these courts, but we do not reach the question raised by the Government, as to the subordination of its tax penalty claim to the claims of the insider general creditors.

In 1978, the bankruptcy laws of this country underwent substantial revision when Congress repealed the Bankruptcy Act of 1898 and enacted, in its stead, the Bankruptcy Reform Act of 1978. Under the earlier 1898 Act, courts ordinarily had no need to address the applicability of equitable subordination principles to governmental penalty claims because section 57(j) of the 1898 Act prohibited the government from collecting non-pecuniary loss penalties. 11 U.S.C. § 93(j) (1976) (repealed 1978). Congress earlier had enacted section 57(j) to protect unsecured creditors from the debtor's wrongful conduct, on a theory that innocent parties should not have to bear the burden of penalties that were intended to punish the bankrupt. *Simonson v. Granquist,* 369 U.S. 38, 40–41, 82 S.Ct. 537, 538–539, 7 L.Ed.2d 557 (1962).

Congress continued this policy of shielding unsecured creditors from the debtor's punitive obligations in the Bankruptcy Reform Act of 1978. *See In re Mansfield Tire & Rubber Co.,* 80 B.R. at 397; H.R. Rep. No. 595, 95th Cong., 1st Sess. 382 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6338. Indeed, Congress both implicitly and explicitly incorporated the 1898 Act's protections against debtor misconduct into the new code. Specifically, in the Bankruptcy Reform Act of 1978, Congress authorized the bankruptcy court to exercise its equitable powers as follows:

**3.** In that case, both the bankruptcy court and the district court examined the Government's

[A]fter notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]

11 U.S.C. § 510(c)(1) (1988). The Congressional sponsors of the Bankruptcy Reform Act of 1978 explained the scope of section 510(c)(1) as follows:

It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct, *or the claim itself is of a status susceptible to subordination, such as a penalty* or a claim for damages arising from the purchase or sale of a security of the debtor.

124 Cong.Rec. H11,089, H11,095 (1978) (emphasis added) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6436, 6452; *see also* 124 Cong. Rec. S17,406, S17,412 (1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S. Code Cong. & Admin.News 6505, 6521. The above commentary indicates that Congress intended section 510(c)(1) to encompass penalty claims.

Moreover, section 510(c)(1) represented a compromise between the House and the Senate. We thus deem it significant that Congress ultimately rejected a Senate version of section 510(c)(1) that would have expressly exempted governmental tax claims from equitable subordination. S.Rep. No. 989, 95th Cong., 2d Sess. 74, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5860.

■ Next, the Government argues that section 510(c)(1), which permits subordination of claims only under "principles of equitable subordination," applies only against parties holding claims who conduct themselves wrongfully or inequitably.

tax penalty claim under the principles of equitable subordination.

*See, e.g., Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 699–700 (5th Cir.1977). Thus, under the Government's view, the doctrine does not apply to its tax penalty claim because no one contends that the penalty was imposed in bad faith. We reject this view of the statutory language.

We first note that the Seventh Circuit, in *In re Virtual Network Servs. Corp.,* 902 F.2d at 1247–49, expressly rejected the Government's contention that Congress intended to prohibit subordination of punitive claims in the absence of wrongful or inequitable conduct. In addition, as the previous quotation from the Bankruptcy Reform Act sponsors demonstrates, *supra* p. 232, Congress contemplated that section 510(c)(1) would be used to subordinate claims involving *either* inequitable conduct *or* claims such as penalties that were of a "status susceptible to subordination."

Moreover, prior to the passage of the Bankruptcy Reform Act of 1978, at least one court already had departed from the wrongful conduct requirement in applying equitable subordination principles. *See Jezarian v. Raichle (In re Stirling Homex Corp.),* 579 F.2d 206, 212–15 (2d Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). In *In re Stirling Homex Corp.,* the Second Circuit held that the claims of defrauded shareholders could be subordinated to the claims of general creditors, even though both groups were presumably innocent. *Id.* at 213. Also, the court had decided *In re Stirling Homex Corp.* just three months before Congress passed the Bankruptcy Reform Act into law, and the opinion relied, in part, on the rationale underlying the then-pending section 510(c)(1) for support in subordinating the shareholders' claims. *Id.* at 214–15. We therefore presume that the Congressional sponsors of the Bankruptcy Reform Act possessed awareness of this decision and its implications prior to the passage of section 510(c)(1). *See In re Virtual Network Servs. Corp.,* 902 F.2d at 1249.

■ The Government additionally argues that the current Bankruptcy Code precludes subordination of non-pecuniary loss penalties in proceedings under chapter 11. In support of this contention, the Government points out that Congress, in enacting the Bankruptcy Reform Act of 1978, rejected a proposal to automatically subordinate non-pecuniary loss penalty claims to the claims of unsecured creditors in all bankruptcy proceedings. *See* H.R.Doc. No. 137, 93d Cong., 1st Sess., pt. II at 115–16 (1973), *reprinted in Collier on Bankruptcy* app. 2 (L. King 15th ed. 1989). Instead, Congress expressly subordinated non-pecuniary loss penalty claims only in chapter 7. *See* 11 U.S.C. §§ 724, 726(a)(4) (1988). Thus, under the Government's view, Congress intended to restrict subordination of punitive claims to proceedings under chapter 7. We again disagree.

We first consider that the equitable subordination provisions of section 510(c)(1) apply to all chapters of the Bankruptcy Code. 11 U.S.C. § 103(a) (1988). We further observe that chapter 7, which applies purely to liquidations, is more conducive to a uniform rule subordinating penalty claims than is chapter 11, which can be used both by reorganizing businesses and by liquidating businesses. In other words, in proceedings under chapter 7, Congress could be certain that in most cases the debtor would cease operations with assets that were insufficient to cover the creditors' claims in full. Therefore, in the chapter 7 context, a uniform rule subordinating penalty claims recognizes that ordinary creditors should receive protection from debtors' punitive obligations.

The same rule, however, would be inappropriate for proceedings under chapter 11. In chapter 11 proceedings, Congress expected that many debtors would continue their operations under a reorganization plan and ultimately return to a viable and profitable economic state. H.R.Rep. No. 595, 95th Cong., 1st Sess. at 220–24, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6179–83. In such cases, the debtor, quite rightly, should bear the burden of its full punitive obligations. Where a chapter 11 debtor opted to liquidate, however, the consequences to creditors could be very similar to a proceeding under chap-

ter 7. Accordingly, we are not persuaded by the Government's argument that the silence of chapter 11 as to penalty claims exempts such claims from subordination under section 510(c)(1). We deem it just as likely that Congress deliberately chose to leave to the bankruptcy court, to determine on a case-by-case basis, the question of whether a penalty claim should be subordinated in a proceeding under chapter 11.

■ Consequently, we agree with the district court that under the facts of this case the general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty in this liquidating chapter 11. Certainly, this accords with the legislative history of the Bankruptcy Reform Act, which generally prefers claims for actual losses over purely punitive claims.

■ At oral argument, the Government nevertheless attempted to discredit the district court's analysis by asserting that certain of the unsecured creditors were corporate insiders. This issue, however, was not presented to either the bankruptcy court or the district court. Instead, the Government relied solely on its statutory construction arguments before those courts. Thus, we do not reach this issue of whether the tax penalty claims of the Government should have been subordinated to the claims of the insiders. Nonetheless, we do observe that in an appropriate case circumstances may arise such that the bankruptcy court, after consideration of the relative equities, may determine that subordination should not apply to the Government's non-pecuniary loss claims vis-a-vis the actual loss claims of some or all creditors. Still, given the Congressional preference for compensating creditors' actual losses first, it seems to us that, in the context of a liquidating chapter 11, the Government bears the burden of directly bringing such equitable considerations to the bankruptcy court's attention. The Government failed to do so in this case.

## III. CONCLUSION

Accordingly, we affirm the district court's judgment in this case subordinating the Government's claim for a non-pecuniary loss tax negligence penalty to the claims of other general unsecured creditors for actual losses.

ROSS, Senior Circuit Judge, concurring separately.

I concur in the majority opinion but write separately to emphasize that we do not, in this opinion, reach the issue of the equitable subordination of the Government's tax penalty claims to the unsecured claims of corporate insiders. This issue was not raised by the United States below and must be left to a future case in which it is properly raised.

My review of the bankruptcy file leads me to the conclusion that payments were made to or on behalf of insiders from the debtor's assets which may have been in violation of the priority requirements of the Bankruptcy Code. This should be determined by the bankruptcy court prior to final distribution.