ALITO, Circuit Judge,
concurring in part and dissenting in part.
I concur in the judgment of the Court that the district court decision automatically subordinating nonpecuniary loss tax penalties must be reversed and that the case must be remanded for a hearing. I disagree, however, regarding the legal standard that should be applied on remand. The majority holds that the district court on remand may subordinate nonpecuniary loss tax penalties without proof of inequitable conduct by the government if a weighing of competing equities suggests that subordination is appropriate. This apparently means that a nonpecuniary loss tax penalty not associated with any inequitable government conduct may be subordinated to other unsecured claims provided these claims are not themselves inequitable. In my view, this holding, which treats nonpecuniary loss tax penalties less favorably than other categories of unsecured claims, is incorrect.[1]
As the majority notes, 11 U.S.C. § 510(c)(1) provides that a bankruptcy court, after notice and a hearing, may subordinate all or part of one claim or interest to all or part of another claim or interest “under principles of equitable subordination.” The critical phrase — “under principles of equitable subordination” — was clearly meant to codify the principles of equitable subordination worked out in the case law. “The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.” Midlantic National Bank v. N.J. Dept. of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986). This rule should be followed “with particular care in bankruptcy codifications” (id.).
The legislative history of Section 510 points unmistakably to the same conclusion. Following the revision of Section 510 in conference, Representative Edwards, sponsor of the House bill, and Senator De-Concini, co-sponsor of the Senate bill, stated on the floor: “It is intended that the term ‘principles of equitable subordination’ follow existing case law and leave to the courts development of this principle.” 124 Cong.Rec. 82416 (1978) (Rep. Edwards); 124 Cong.Rec. 34016 (1978) (Sen. DeConci-ni). Similarly, the report on the Senate bill, from which the phrase “principles of equitable subordination” was taken, stated *122 that “[tjhese principles are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct.” S.Rep. No. 95-989, 95th Cong., 2d Sess. 74, reprinted, in 1978 U.S.Code Cong. & Admin. News 5787, 5860. Likewise, the report on the House bill, which permitted subordination “on equitable grounds,” explained that this section was intended to codify case law. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 359, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6315.
What, then, did “principles of equitable subordination” mean in the case law when the new bankruptcy code was adopted in 1978? As the Fifth Circuit explained in an authoritative decision surveying the cases on the eve of the adoption of the new code, those principles required, among other things, that “[tjhe claimant must have engaged in some type of inequitable conduct.” In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir.1977). See also, e.g., In re Ahlswede, 516 F.2d 784, 788 (9th Cir.1975), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); Farmers Bank v. Julian, 383 F.2d 314, 323 (8th Cir.1967), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); In re Credit Industrial Corporation, 366 F.2d 402, 408 (2d Cir.1966).
The conspicuous paucity of contrary authority in the decisions addressing the subordination of nonpecuniary loss tax penalties is telling. Indeed, these decisions identify only one pre-1978 case that purportedly permitted equitable subordination without proof of inequitable conduct by the claimant. In that case, In re Stirling Homex Corp., 579 F.2d 206 (2d Cir.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), the Second Circuit affirmed the subordination of the claims of allegedly defrauded stockholders. As stockholders, these claimants would not have been entitled to any of the proceeds resulting from liquidation, but by suing they sought to achieve parity with the general unsecured creditors. Although the Second Circuit did not explicitly label their conduct inequitable, its decision was clearly based on the view that their conduct was designed to achieve an inequitable result that should not be permitted. Thus, even if In re Stirling Homex Corp. was a departure from prior precedent, it did not abandon the concept that equitable subordination must be based on the conduct of the individual claimant. At most, In re Stirling Homex Co. represented an incremental change in the established doctrine.
By contrast, the holdings of the district court and the majority in the present case represent a sharp break from the established doctrine codified in Section 510(c)(1). The holdings of the district court and the majority do not rest on the claimant’s conduct but on the view that one category of unsecured claims (those representing actual pecuniary loss) should be treated more favorably than another category of unsecured claims (those representing nonpecu-niary loss tax penalties). Decisions about the treatment of categories of claims in bankruptcy proceedings, however, are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination, as codified in Section 510(c)(1).
The sequence of events leading to the enactment of Section 510 also suggests that Congress did not intend to authorize the subordination of penalty claims under the doctrine of equitable subordination. In the Bankruptcy Commission’s proposed statute, Section 4-406(a)(l) subordinated all penalty claims, while Section 4-406(c) codified the court’s power of equitable subordination. H.R.Doc. No. 93-137, pt. II, 93d Cong., 1st Sess. 115-117 (1973). Bills containing provisions closely patterned after Section 4-406 of the Commission’s recommendation were then introduced in the House and Senate. See, e.g., H.R. 10792, 93d Cong., 1st Sess., sec. 4-406 (1973); H.R. 31, 94th Cong., 1st Sess., sec. 4-406 (1975); S. 236, 94th Cong., 1st Sess., sec. 4-406 (1975). After hearings, however, new bills following the different approach to subordination contained in the present code were introduced. Under that approach, although the general power of equitable subordination was still recognized (11 U.S.C. § 510(c)(1)), the subordination of *123 penalties was restricted to proceedings under chapter 7 (11 U.S.C. § 726). This sequence of events strongly suggests that Congress did not want penalties to be subordinated on a wholesale basis in proceedings under chapters 9, 11, and 13. Yet the majority’s position seems very likely to bring about precisely that result.
Contrary to the interpretation contained in some decisions permitting the equitable subordination of nonpecuniary loss tax penalties (see, e.g., Schultz Broadway Inn v. United States, 912 F.2d 230, 232-33 (8th Cir.1990); In re Virtual Network Services Corp., 902 F.2d 1246, 1248 (7th Cir.1990)), the previously mentioned statements made on the floor of Congress by Representative Edwards and Senator DeConcini do not justify any fundamental departure from established case law. In an identical passage in both statements, Representative Edwards and Senator DeConcini, after stating that section 510(c)(1) was meant to “follow existing case law,” added that “development” of the principles of equitable subordination would be “[left] to the courts.” This “development,” however, while very likely meant to permit the kind of incremental change effected by In re Stirling Homex, cannot include a fundamental break from “existing case law” such as that adopted by the district court or the majority in this case.
Nor can the reference to “a penalty” in these same floor statements justify the holding of the district court or the majority. In the passage noted above, Representative Edwards and Senator DeConcini stated:
To date, under existing case law a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.
124 Cong.Rec. 32416 (1978) (Rep. Edwards); 124 Cong.Rec. 34016 (1978) (Sen. DeConci-ni) (emphasis added).
The meaning of this reference to “a penalty,” however, is unclear. Representative Edwards and Senator DeConcini were describing equitable subordination “under existing case law,” and “under existing case law,” as previously noted, penalties were not “susceptible to subordination.” Since it is impossible to determine what Representative Edwards and Senator DeConcini meant when they referred to “a penalty,” that reference should not control the interpretation of the statute. Moreover, whatever Representative Edwards and Senator DeConcini had in mind, a single, ambiguous reference to “a penalty” in their floor statements could not have alerted the other members of Congress that the new code would fundamentally change the “principles of equitable subordination” recognized by the courts. A fleeting reference in floor statements — even authoritative floor statements by sponsors of the proposed legislation — should not be given controlling weight.
In conclusion, the claims at issue in the present case should be subordinated on remand only if there is evidence of conduct by the government in this particular case that makes subordination equitable.

. The majority relies in part upon the government’s concession at oral argument that nonpe-cuniary loss tax penalties may be subordinated on a case-by-case basis without proof of inequitable conduct (Maj. op., at 120 & n. 13, 119 n. 14.), but the majority does not base its decision on that concession alone. I believe this is the proper approach. By adopting the new position advanced at oral argument, the government not only gave up what it had argued in its briefs was a legal right (i.e., the right to be free from equitable subordination absent proof of inequitable conduct), it also asserted that the bankruptcy courts must perform a new procedure (i.e., conduct a hearing involving a comparison of the competing equities) whenever equitable subordination is sought. This court should not require the bankruptcy courts to follow this new procedure unless it is prescribed by law. Therefore, despite the government's concession, this court must decide for itself whether this procedure is necessary.