**In re CMC ELECTRONICS CORPORATION, Debtor.**

**Arthur C. UNGER, Trustee/Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Bankruptcy No. 87–01297–293.
Adv. No. 91–4136.

United States Bankruptcy Court, E.D. Missouri, E.D.

Oct. 15, 1993.

Steven B. Higgins, U.S. Atty., Eastern Div., St. Louis, MO, for the U.S.

Steven W. LaBounty, Senior Atty., Dist. Counsel, I.R.S., Midwest Region, St. Louis, MO, for I.R.S.

Thomas Blumenthal, Love, Lacks & Paule, Clayton, MO, for Paychex, Inc.

Chris Grigorian, Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S. Dept. of Justice.

Joel A. Kunin, Carr, Korein, Tillery, Kunin, Montroy Glass & Bogard, East St. Louis, IL, for trustee.

James S. Cole, St. Louis, MO, Asst. U.S. Trustee.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursu-

ant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O) which the Court may hear and determine.

## FACTUAL BACKGROUND

(1) Section 6721 of title 26 of the United States Code applicable in 1988 and the regulations then in effect required the Debtor in this case to file its W–2 tax forms on magnetic tape.

(2) The Debtor contracted with Paychex, Inc. (Paychex), in March of 1988, to perform certain services, including: issuing paychecks, keeping records, and preparing tax reports and forms in the manner and format required under the applicable provisions of the Internal Revenue Code for submission to the IRS. Pursuant to its contract with the Debtor, Paychex prepared payroll forms for fewer than 250 of the Debtor's employees for the year 1988.

(3) The Debtor did not comply with section 6721 and the regulations pertaining to the filing of returns on magnetic tape for the tax year ending December 31, 1988 and the IRS assessed a $12,700.00 penalty against the Debtor on January 29, 1990.[1]

(4) In a telephone call on March 4, 1991, trustee Unger first notified Paychex of the imposition of the IRS penalty.

(5) The IRS filed a claim against the Debtor's estate for the amount of the penalty to which the trustee objected. The trustee argued that compliance with the IRS' requirement that the Debtor file its returns on magnetic tape would have imposed an undue hardship upon the Debtor.

(6) The Court held a hearing at which it orally denied the trustee's objection to the Internal Revenue Service's (IRS) proof of claim filed against the Debtor. The trustee subsequently filed this adversary proceeding seeking three alternative forms of relief from the Court. First, Mr. Unger asked the Court to find that Paychex, by preparing Debtor's 1988 tax returns on paper rather than on magnetic tape, had violated its contractual duty to the Debtor and caused Debtor to incur the $12,700.00 penalty. Second, the trustee asked the Court to find that Paychex acted negligently when it prepared Debtor's 1988 tax returns on paper rather than on magnetic tape and that this breach of duty caused the IRS to impose the $12,700.00 penalty against the Debtor. Third, the trustee asked the Court to subordinate the IRS's claim against the estate to the claims of Debtor's unsecured creditors. In support of his charge that the Court should subordinate the IRS's claim, the trustee noted that the regulation which required the Debtor to file its W–2 forms on magnetic tape had been revised the year following the Debtor's noncompliance and, as revised, would not require the Debtor to file its W–2 forms on magnetic tape. The trustee argued that the IRS's loss was equitably inferior to the loses suffered by CMC's unsecured creditors. To further support his claim that the Court should subordinate the IRS's claim, Mr. Unger asserted that the penalty's statutory purpose of deterring future non-compliance by the Debtor did not apply in CMC's case because CMC was liquidating its operations.

(7) Paychex filed an answer with affirmative defenses. Paychex asserted the defenses of laches and estoppel because the Debtor did not inform it that the IRS had imposed the penalty which serves as the basis of the Government's claim until more than one year after the time to file for a hardship waiver of the penalty had expired.

Paychex further argued that the Debtor's failure to notify it of the hearing in which the Court determined that the estate owed the penalty to the Government prejudiced Paychex in that if Paychex had known of the hearing, it could have litigated the validity of the penalty which forms the basis of CMC's adversary complaint against Paychex.

1. The IRS asserts in its brief that the $12,700.00 penalty represents $50.00 for each W–2 form the Debtor improperly submitted to the agency meaning the Debtor filed 254 W–2 forms on paper instead of magnetic media as the applicable regulations required it to do. However, the Debtor's accountant offered uncontested testimony that the Debtor only filed 247 W–2 forms for the 1988 tax year.

Finally, Paychex asserted that the Debtor was contributorily negligent because it failed to inform Paychex that it needed to file its tax returns on magnetic tape, it filed W–2 forms not prepared by Paychex for the year 1988 which brought the total number of W–2 forms filed by CMC to a number in excess of 250,[2] and because it never notified Paychex that it had previously file its returns on magnetic tape.

(8) The IRS filed a motion to dismiss the trustee's adversary on the ground that the trustee had a conflict of interest because he was potentially liable for the amount owed to the Government. The IRS argued that CMC's creditors would not incur any monetary loss if the Court did not subordinate the Government's claim, because they could sue the trustee for the amount of the penalty. Of course, such an argument assumes the trustee would lose the lawsuit.

The IRS further argued that because the trustee's actions had caused the estate to suffer a loss (the penalty) he lacked standing to bring a challenge to the loss he caused. The Government alleged that Mr. Unger's motive for moving the Court to subordinate the IRS's claim against the Debtor was to avoid personal liability to the estate for his own error and not to benefit the estate's creditors.

(9) At a pretrial hearing on this adversary, the Court indicated to the parties that it would not relitigate the issue of the estate's liability to the Government and that it had to determine whether to subordinate the IRS's claim before it would resolve any of the other issues the parties had raised. The parties agreed to brief the subordination issue and reserve setting the adversary for trial until the briefs were submitted and the Court resolved the subordination issue.

(10) The trustee filed a brief in support of his complaint for equitable subordination. The trustee pointed out that the portion of the regulations which he violated was eliminated from the regulations in the next year. He argued that, under Eighth Circuit prece-

dent, the Court could subordinate the tax penalty the IRS assessed against the CMC's estate if it found that the penalty was nonpecuniary in nature. The trustee maintained that the penalty the IRS assessed against the CMC estate was nonpecuniary because, one, it did not approximate the actual loss CMC's noncompliance caused the government and, two, it served a deterrent function.

(11) Paychex filed a memorandum adopting the trustee's "Brief in Support of Complaint for Equitable Subordination" and joining the trustee's motion for equitable subordination of the government's claim.

(12) The United States filed a brief supporting its opposition to the trustee and Paychex's attempt to subordinate its claim to the claims of CMC's unsecured creditors. The United States admitted the penalty that the trustee sought to subordinate is nonpecuniary in nature[3] and argued that the real issue in the case is not the nature of the penalty but rather, whether the equities support subordination.

The United States maintained that the equities in this case do not support subordinating its claim to those of CMC's general unsecured creditors. The IRS emphasized that it assessed the penalty against CMC as a result of trustee's post-petition conduct which would qualify for administrative expense status in a Chapter 7 case and would be paid in full.

The IRS also pointed out that penalties based on a debtor's post-petition conduct differ from penalties based on a debtor's pre-petition conduct because general unsecured creditors have recourse against the trustee for losses they incur as a result of the penalties imposed on the basis of post-petition conduct but they lack an analogous right against the party who caused the debtor to incur a penalty based upon pre-petition conduct. Therefore, the Government insisted, subordination was not warranted in this case because the general unsecured creditors, af-

---

2. The regulation which served as the basis of the IRS's penalty required taxpayers with more than 250 employees to file their W–2 forms on magnetic media.

3. Previously, Mr. Steven LaBounty, who represented the IRS at the March 5, 1991 hearing, had contested the trustee's characterization of the penalty as nonpecuniary.

ter recovering from the trustee, would not bear the burden of paying the tax penalty.

The Government also argued that the Court's subordination of the penalty imposed against CMC would undermine the public policies of deterring improper filings and compensating the Government for the extra costs involved in processing improperly filed returns. The IRS equated subordination of the penalty against CMC with a blanket rule allowing bankruptcy trustees to circumvent the provisions of the Internal Revenue Code.

Finally, the IRS argued that the Debtor, contrary to the trustee's assertions, had also violated the amended version of the regulation under which the Government had imposed the penalty.

(13) The trustee filed a reply to the Government's brief in which he asserted that the circumstances surrounding his appointment and, consequently, the limited powers given to him in this case, justified the equitable subordination of the IRS's claim. He also maintained that the estate's right of recourse against him did not provide a basis on which this Court could decline to subordinate the IRS's claim. Finally, the trustee argued that the non-pecuniary, IRS-imposed penalty lacked an equitable foundation.

## DISCUSSION

▮ The Eighth Circuit Court of Appeals, like two other Circuit Courts of Appeals, has held that section 510(c) of the Bankruptcy Code gives a court presiding over a Chapter 11 liquidation bankruptcy the power to subordinate a government's claims for non-pecuniary loss tax penalties to the claims of non-insider, general, unsecured creditors. *Schultz Broadway Inn v. U.S.*, 912 F.2d 230, 234 (8th Cir.1990) see *Burden v. U.S.*, 917 F.2d 115 (3rd Cir.1990); *In re Virtual Network Servs. Corp.*, 902 F.2d 1246 (7th Cir. 1990); see also *In re Landbank Equity Corp.*, 973 F.2d 265, 271 (4th Cir.1992) (recognizing that equitable doctrines such as subordination are "available for use" in some bankruptcy cases).

The *Schultz Broadway Inn* case involved the subordination of the Government's claim based upon a negligence penalty the Internal Revenue Service had assessed, prepetition,

against the debtor. 912 F.2d at 231. The Court in deciding to allow the subordination noted that section 726 of the Bankruptcy Code requires the subordination of governmental penalty claims in bankruptcies brought under Chapter 7 of the Code because in such cases the debtor usually ceases operations with assets insufficient to fully satisfy its creditors' claims and "a rule subordinating penalty claims recognizes that ordinary creditors should receive protection from debtors' punitive obligations." *Id.* at 233. The Court reasoned that Congress did not include a rule requiring the subordination of penalty claims among the provisions of the Code governing Chapter 11 because many Chapter 11 debtors continue to operate through bankruptcy and "quite rightly should bear the burden of [their] full punitive obligations." *Id.* The *Schultz Broadway Inn* court further reasoned that a Chapter 11 liquidation bankruptcy more closely resembles, for purposes of subordinating non-pecuniary loss penalties, a Chapter 7 case than a Chapter 11 reorganization and so a court could properly, after considering the equities, subordinate a government's claim based upon a non-pecuniary loss penalty to the claims of non-insider, general, unsecured creditors. *Id.* at 234. The Eighth Circuit emphasized that "given Congress' preference for compensating creditors' actual losses first ... in the context of a liquidating chapter 11, the Government [opposing the subordination of its claim based upon non-pecuniary losses] bears the burden of directly bringing ... equitable considerations to the bankruptcy court's attention." *Id.*

Though the *Schultz Broadway Inn* case involved a claim based upon a penalty assessed as a result of the debtor's prepetition conduct, other courts have subordinated claims based upon non-pecuniary loss penalty assessments that arose from the debtor's post-petition conduct. *In re First Truck Lines, Inc.*, 141 B.R. 621 (Bankr.S.D.Ohio 1992); *Walker v. Ferguson (In re Import & Mini Car Parts, Ltd.)*, 136 B.R. 178 (Bankr. N.D.Ind.1991). The *First Truck Lines* court rejected the Government's argument that the post-petition nature of its penalty claim saved it from subordination to the claims of the debtor's general unsecured creditors.

*Id.* at 626. The court held that the post-petition nature of penalty on which the Government based its claim was only one equity it would consider in deciding whether to subordinate that claim to the claims of the liquidating debtor's unsecured creditors. *Id.* at 628. The court concluded that it should subordinate the Government's claim partly because, given the fact that the debtor was liquidating, enforcement of the penalty would not achieve the Government's goal of deterring the debtor from future noncompliance and would only diminish the distribution that innocent creditors would receive. *Id.*

Judge Barta of this Court has applied section 510(c) of the Bankruptcy Code to subordinate to the claims of the debtor's general, unsecured creditors, a state's claim for penalties assessed against the debtor for its violation of a statute requiring it to pay its employees accrued wages within seven days of receipt of written demand for their payment. *In re Channel One Communications,* 125 B.R. 234 (Bankr.E.D.Mo.1991). In choosing to subordinate the state's claim, Judge Barta employed section 510(c) of the Code and cited "the clear policy that innocent parties, such as general, unsecured creditors, should not have to bear the burden of penalties that were intended to punish the debtor." *Id.* at 235–36 (citing *Schultz Broadway Inn v. U.S.,* 912 F.2d 230, 234 (8th Cir.1990) and *Simonson v. Granquist,* 369 U.S. 38, 40–41, 82 S.Ct. 537, 538–39, 7 L.Ed.2d 557 (1962)).

In a case such as this, where the debtor's unsecured creditors will not receive the full value of their claims, Congress' preference for compensating creditors' actual losses first and the policy that innocent parties should not have to bear the burden of penalties lead this Court to conclude that it should subordinate the Government's claim based upon tax penalties to the claims of the claims of CMC's general, unsecured creditors. More specifically, the equities of the situation warrant subordinating the Government's claim to those of CMC's general, unsecured creditors. The Government has conceded that the basis of its claim is a non-pecuniary loss tax penalty while the unsecured creditors claims represent actual debts owed those creditors. The equities favor subordinating the Government's claim to those of the unsecured creditors.

■ The Government points out that because the penalties were assessed in response to the trustee's post-petition conduct the unsecured creditors might be able to pursue the trustee for any penalty the estate pays. The Government further argues that if the unsecured creditors recovered from the trustee, they would suffer no loss from the Court's denial of the trustee's request for subordination of the Government's claim and that this potential reimbursement justifies denying the trustee's request for subordination. The Court disagrees. The Government has not presented evidence to the Court indicating that the estate's unsecured creditors could prevail against the trustee and the Court does not know what defenses the trustee could offer if CMC's unsecured creditors attempted to recoup any payment of the Government's claim from him. But these matters are not before the Court, the only issue before the Court is whether to subordinate the Government's claim to those of CMC's general, unsecured creditors. The Eighth Circuit has instructed us to balance the equities when deciding whether to subordinate one claimant's claim to those of other claimants. In this case, we must decide whether to allow the payment of the Government's nonpecuniary loss claim before the pecuniary loss claims of CMC's numerous, general, unsecured creditors. The Court is convinced the equities favor subordinating the Government's claim.