In re AMERICANA APPAREL, INC., Debtor.

OFFICIAL CREDITORS' COMMITTEE, Plaintiff,

v.

CHARLES GORDON & SONS, INC., Defendant.

Bankruptcy No. 82–05350G.
Adv. No. 85–0042G.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 13, 1985.

Claudia Z. Springer, Mitchell K. Posner, James R. Malone, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff, Official Creditors' Committee.

Jane B. McElhenney, Wessel and Carpel, Philadelphia, Pa., for defendant, Charles Gordon & Sons, Inc.

Edward J. DiDonato, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for debtor, Americana Apparel, Inc.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The matter in dispute is whether we should disallow or subordinate an insider's proof of claim against the debtor. For the reasons stated herein we will subordinate the claim to the interests of general unsecured creditors.

We outline the facts of this controversy as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") in 1982. Ten years earlier the debtor was formed shortly after the execution of a pre-incorporation agreement signed by Charles Gordon and Sons, Inc. ("Gordon"), who is the claimant at issue, Jacob Gordon, Bernard Rosen, Max Lipschutz and Bert Resnick.

The agreement specified the amounts of stock each of the above named entities would receive in exchange for his contribution to the debtor. In the following language the agreement also provided the basis for Gordon's claim in the case before us:

> The [debtor] will enter into an agreement with Charles Gordon & Sons, Inc. whereby Charles Gordon & Sons, Inc. shall be paid three and one-half percent (3½) of the gross receipts of [the debtor] and Charles Gordon & Sons, Inc. shall act as a consultant to [the debtor] in establishing and maintaining its retail outlets.

Pre-incorporation agreement at p. 3. Although asked to do so, Gordon could not produce any written contract which was adopted to implement the above quoted consulting clause in the pre-incorporation agreement and the individual Gordons could not remember the terms of any oral consulting contract.

At all pertinent times the debtor's principal officeholders were Jacob Gordon as president, Saul Gordon as secretary and Joseph Gordon as treasurer, each of whom was also a shareholder. Each of these individuals also held the same respective corporate offices in the debtor. Gordon failed to introduce any credible evidence that Gordon performed any consulting services in addition to the services required by the individual Gordons as officers of the debtor.

From the incorporation of the debtor until the end of 1975 the 3½% fee was paid within the calendar year that the fee accrued. Thereafter, the payments were made with increasing delinquency as is set forth below in a footnote.[2] All the while the payments to Gordon were delayed, oth-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2.

| Time of Generation of Gross Receipts | Time of Payment of 3-½% Fee |
| --- | --- |
| January 1975 | 1/14/76 |
| February | 6/29/76 |
| March | 9/13/76 |
| April | 1/7/77 |
| May | 4/3/77 |
| June | 9/28/77 |
| July | 6/22/78 |
| August | 10/6/78 |
| September | 10/6/78 |
| October | 10/6/78 |
| November | 10/6/78 |
| December | 3/8/79 |
| January 1976 | 3/8/79 |
| February | 1/10/80 |
| March | 1/16/80 |
| April | 2/15/80 |
| May | (Cessation of payments) |

er creditors were generally being paid on a timely basis, at least until shortly prior to the filing of the chapter 11 petition. At no time did Gordon resort to "self-help" or judicial process to collect on the claim.

The existence of the 3½% fees was a closely kept secret which was apparently known only to the signatories of the pre-incorporation agreement. The liability was not reflected on the debtor's financial statements as either a short or long term obligation and it was not listed on Gordon's books as an account receivable. The debt was not made known to the debtor's creditors and, in fact, it was not listed in the debtor's schedule of debts when it filed its petition for bankruptcy even though those schedules were signed by Joseph Gordon. The schedules then revealed that a debt of only $3,365.00 was owed by the debtor to Gordon. This continued even through the filing of the debtor's disclosure statement thus making that document woefully inadequate. The plan, likewise deficient, treated aggregate claims of $600,000.00 rather than claims of over $1,000,000.00 with the inclusion of the alleged debt. The existence of Gordon's claim did not come to light until January of 1984 with the filing of its proof of claim for $434,266.56.

The Official Creditors' Committee filed an objection to the proof of claim challenging the existence of any obligation in that amount owing to Gordon and also filed a complaint to subordinate the claim to the rights of general unsecured creditors.

■ The evidentiary effect afforded a proof of claim is specified in Bankruptcy Rule 3001(f) which states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Under this rule a claim has a presumption of validity until a party objecting to the claim has introduced evidence sufficient to rebut the claimant's prima facie case. *In Re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir.1977). This rule likewise applies to the claims of insiders. The principle enunciated in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), requiring a claimant who is a fiduciary to a

corporation, to prove the good faith and inherent fairness of his transactions with the corporation, does not apply until the objecting party overcomes the prima facie effect of the claim. Absent such a requirement, an intolerable burden would be placed on corporate fiduciaries, requiring them to prove the good faith and fairness of each of their dealings with the corporation. *In re Mobile Steel Co.*, 563 F.2d at 701.

■ Subordination of a claim is expressly authorized by 11 U.S.C. § 510 of the Code, which states as follows:

(a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

11 U.S.C. § 510. The court's power of subordination under this provision is, of course, not unlimited although it may be used under the following circumstances:

(i) The claimant must have engaged in some type of inequitable conduct[;]

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant[; and]

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In Re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977); *In Re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980); *In Re Breezewood Acres, Inc.*, 28 B.R. 32, 35 (Bankr.M.D.Pa.1982). Where the claimant is a fiduciary of the debtor, the courts have generally required a showing of fraud, overreaching, inequitable conduct or, in some instances, the violation of the rules of fair play and good conscience by the claimant, in order to warrant subordination of a particular claim. *See, e.g. Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238; *Frasher v. Robinson*, 458 F.2d 492, 493 (9th Cir.1972), *cert. den.*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *In Re Midtown Produce Terminal, Inc.*, 599 F.2d 389, 392 (10th Cir.1979); *Zimmerman v. Central Penn National Bank* (In Re Ludwig Honold Mfg. Co., Inc.), 46 B.R. 125, 128

(Bankr.E.D.Pa.1985). Applying this authority to the case before us, it is clear that the Creditors' Committee has overcome the prima facie validity of Gordon's proof of claim. Since Gordon is an insider the burden of supporting the validity of the transaction at issue falls on it. In this it has utterly failed. There is no credible evidence supporting the existence of a contract for consulting services other than the above quoted language from the pre-incorporation agreement. Furthermore, the management of Gordon, the alleged consultant, consisted of Joseph, Jacob and Saul Gordon, all of whom were senior officers of the debtor. The situation at bench is tantamount to hiring oneself as a consultant.

The 3½% obligation expressed in the pre-incorporation agreement bears little resemblance to a debt obligation and, in fact, prior to the filing of the petition, the parties treated the obligation as an equity interest in the debtor. We hold that the $434,266.56 figure represents Gordon's equity interest in the debtor rather than its interest as a creditor. We conclude that this is a sufficient basis for subordination under 11 U.S.C. § 510 and we will enter an order subordinating this interest to the rights of general unsecured creditors.