### In re Wilfred H. BURDEN.

### Civ. A. No. 89–6550.

United States District Court,
E.D. Pennsylvania.

Dec. 22, 1989.

Joseph F. Minni, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

James L. Davis, Reading, Pa., for debtor.

## MEMORANDUM

GILES, District Judge.

## I. BACKGROUND

Appeal is taken by the U.S. Internal Revenue Service (IRS) from a final order of the bankruptcy court administering a Chapter 13 proceeding. Jurisdiction is founded upon 28 U.S.C. § 158.

The IRS filed a proof of claim in the amount of $57,930.17 against the debtor for federal employment and income taxes. The debtor objected. The bankruptcy judge, ruling upon the objection, subordinated the pre-petition penalties portion of the IRS's claim to a status of general non-subordinated unsecured claims. In doing so, he invoked the bankruptcy's court's equitable subordination power under 11 U.S.C. § 510(c). It provides, in pertinent part:

> After notice and a hearing, the court may (1) under principles of equitable subordination, subordinate for purpose of distribution all or part of an allowed claim to all or part of another allowed claim ...

The IRS now appeals from that part of the decision.

The sole question presented is one of law. Therefore, the district court's review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–3 (3d Cir.1981).

The IRS contends that the legislative history of 11 U.S.C. § 510(c)(1) does not support the exercise of discretion by the bankruptcy judge who, allegedly, acted without authority. It argues that subordination is inappropriate in a Chapter 13 context because of an absence of legislation specifically allowing subordination under Chapter 13, as is allowed in Chapter 7 (§ 726(a)(4)) proceedings. The debtor, on the other hand, argues the opposite; that is, the legislative history allows the court to apply the principle of equitable subordination to the facts of a particular case and that, in any event, penalties are of a nature peculiarly susceptible to equitable subordination.

For the reasons which follow this court finds that the tax penalties are subject to the equitable subordination power of the bankruptcy court and, affirms the final order below.

## II. THE LEGAL ISSUE

In explaining the compromise bill of the House and Senate versions of the bill to establish uniform bankruptcy laws, Congressman Donald Edwards (D., Calif.) stated that the principle of equitable subordination is intended to follow existing case law "... and leave to the courts the development of this principle". Vol. 124, Part 4 Cong.Rec. Pg. 32,398 (September 28, 1978). The legislative history also contemplates that equitable subordination be used when the claim itself is susceptible to subordination, such as a penalty. It is irrelevant whether the claim is secured. *Id.*

These statements, on their face, seem to confer upon the courts the power to exercise equitable subordination in the area of tax penalties. However, this court must carefully scrutinize this interpretation. The IRS argues that Congressman Edwards' statement that penalties are of a nature making them susceptible to subordination does not refer to tax penalties. It also notes that the law, prior to the enactment of this section, allowed courts to exer-

cise the power of equitable subordination when the wrongdoing of one creditor created an injustice to other creditors. *Stebbins v. Crocker Citizens National Bank*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *In re Calpa Products Co.*, 249 F.Supp. 71, 73 (E.D.Pa.), *aff'd. mem*, 354 F.2d 1002 (1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966). We evaluate these arguments.

Traditionally courts have looked for the following circumstances in exercising the power of equitable subordination: 1) the claimant must have engaged in some type of inequitable conduct, 2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant, and 3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code. *In re Ludwig*, 46 B.R. 125 (Bankr.E.D.Pa.1985); *In re Americana Apparel, Inc.*, 55 B.R. 160 (Bankr.E.D.Pa. 1985). The facts of this case do not satisfy these elements.

Some courts have expanded the doctrine of equitable subordination to allow subordination of punitive penalties, generally. *In re Colin*, 44 B.R. 806 (Bankr.S.D.N.Y.1984) involved an adversary proceeding under Chapter 11 for damages arising from a claim of breach by debtor of a contract and certain fiduciary duties. The court held that punitive damages are penalty claims as contemplated by § 510(c)(1), reasoning that they fail to serve a remedial purpose, but are designed to deter wrongful conduct by the defendant and others in the community. It further reasoned that the damages were to be paid by the estate, not the wrongdoer, resulting in innocent creditors, who would share in the estate, bearing the burden of the penalty. *Id.* at 810.

*In re Merwede*, 84 B.R. 11 (Bankr.D.C. Conn.1988) extended this rationale to a Chapter 13 proceeding on facts similar to those presented here. After debtor filed for relief under Chapter 13, the IRS filed a proof of claim for tax penalties incurred for failure to pay taxes. When the debtor filed a plan that subordinated the claim from an unsecured priority position to the position of other allowed unsecured claims, it argued that the court should subordinate the claim pursuant to § 510(c). The IRS argued that the legislative history did not contemplate equitable subordination of tax penalties. The court disagreed, basing its opinion on the equity power of the bankruptcy court affirmed by the Supreme Court in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Congress reaffirmed *Pepper* in the legislative history of the Act. H.R.Rep. No. 595, 95th Cong., 1st Sess., 359 (1977), *reprinted in* U.S. Code Cong. & Admin.News 5787, 5963, 6315 (1978). While it is true that *Pepper* confirms the bankruptcy court's equitable powers, the facts of the case involve a scheme to defraud creditors. Therefore, this reasoning does not conclusively show that Congress intended for the power to be exercised in the case of tax penalties.

Other courts have followed the lead of the *Colin* court. *In re Airlift International, Inc.*, 97 B.R. 664 (Bankr.S.D.Fla. 1989) (court subordinated tax penalties for failure to meet minimum funding of pension plans under collective bargaining agreement in Chapter 11 case); *In re Schultz Broadway Inn, Ltd.*, 89 B.R. 43 (W.D.Mo.1988) (court subordinated negligence penalties in Chapter 11 case); *In re Standard Johnson Co., Inc.*, 90 B.R. 41 (Bankr.E.D.N.Y.1988) (court upheld debtor's objection to IRS proof of claim conferring priority status to pre-petition penalties); *In re Mansfield Tire & Rubber Co.*, 80 B.R. 395 (N.D.Oh.1987) (court granted Trustee in Bankruptcy's summary judgment motion in a Chapter 11 case, classifying taxes as penalties and thereby subordinating them); *In re Quality Sign Co.*, 51 B.R. 351 (Bankr.S.D.Ind.1985) (IRS's objection to debtor's Chapter 11 plan's treatment of pre-petition penalties as subordinate to unsecured claims rejected by court). These opinions, however, do not explain sufficiently the basis for subordinating tax penalties as if they were punitive damage awards.

### III. THE LEGISLATIVE HISTORY

The Bankruptcy Reform Act of 1978 (the "Act") was intended to upgrade and mod-

ernize the existing bankruptcy laws. S.Rep. No. 95–989, 95th Cong., 2nd Sess., *reprinted in* U.S.Code Cong. & Admin. News 5787, 5789 (1978). The Act was designed to be consistent with, and merely an extension of, traditional concepts of ordinary bankruptcy law, responding to changing needs and economic conditions. 5 Collier on Bankruptcy ¶ 1300.01.

Congress divided the bankruptcy law into the present seven "Chapters" (1, 3, 5, 7, 9, 11, and 13). Suits may be brought in the four later Chapters (7, 9, 11 and 13), each having rules uniquely sculpted to advance its particular objective. The Act maintains a fluidity between these four chapters latter by providing certain common rules. For example, they allow for discharge of debt, automatic stay of pending actions and a plan to pay creditors. The common purpose of the Act, consistent with prior bankruptcy jurisprudence, is to give the debtor a fresh start by discharging debt and obtaining more ratable asset distribution to creditors. 5 Collier on Bankruptcy ¶ 1300.01. Because these two goals often conflict, Congress enacted legislation which balances continuously these two interests.

Chapter 13 provides debt adjustment for individuals. This means that an individual debtor or sole proprietor of a business in financial difficulty can formulate a plan for payment of claims out of future earnings. Therefore, Title 11, United States Code, Section 1322(a)(2) requires a Chapter 13 plan to provide for full payment of all claims entitled to priority under 11 U.S.C. § 507.

The debtor may convert a Chapter 13 proceeding into either a Chapter 7 or 11 case. Because the debtor has that prerogative, the Act makes attempts to equalize the effects of the various bankruptcy actions on the creditors. For example, it attempts to protect the creditors from being penalized by the debtor's choice of Chapter action by treating claims the same in Chapter 13 as in Chapter 7. Weintraub & Resnick, Bankruptcy Law Manual ¶ 9.11[1], [3] (1986). An individual can convert to Chapter 7 at any time, 11 U.S.C. § 1307(a), and all debts owed prior to the time of conversion are dischargeable in the event of conversion under 11 U.S.C. § 727(b).

General provisions on filing claims, allowance of claims, administrative expenses, priority of claims and subordination of claims in liquidation cases are also applicable to Chapter 13 cases. *Id.* at ¶ 9.09. Thus, there is a practical symmetry between the two Chapters that cannot be ignored merely because Chapter 7 provisions are not directly applicable to Chapter 13 cases. Therefore, the Bankruptcy Act must be considered as a whole to advance the policies therein.

Historically, Congress has tried to ensure that tax policies do not frustrate the operation of the bankruptcy laws. H.R. 8200, *reprinted at* U.S.Code Cong. & Admin.News at 6231 (1978). Sections 346, 728, 1146 and 1231 of the Act evidence this concern. At the same time Congress has tried to create bankruptcy laws that would be more sensitive to policies advanced by federal, state and local tax laws. *Id.* at 6231. Tax claims receive a priority position because taxing authorities cannot choose their debtors as commercial creditors can. *Id.* at 6150. Priority claims are paid in advance of general claims. Yet, taxes which are fines and penalties are not entitled to priority, even to the extent of actual pecuniary loss. *Id.* at 6151.

Congress' intent to distinguish tax claims from tax penalties becomes clearer when viewed in light of the history of bankruptcy law. Therefore, the Bankruptcy Act of 1898, and amendments thereto, is helpful because Congress intended its new legislation to be consistent with this predecessor statute. Under prior law, a specific provision barred allowance of a claim for tax penalties by the government altogether. 30 Stat. 561, as amended, 11 U.S.C. § 93(j), often cited as § 57(j). This provided, in pertinent part, that:

> "Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transac-

tion, or proceeding out of which the penalty or forfeiture arose ..."

In *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1961), the Supreme Court interpreted the provision as applicable to secured or unsecured debt. The Court stated, "... this section ... is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claim involved." *Id.* at 40, 82 S.Ct. at 539.

Equitable asset distribution has long been a goal of bankruptcy jurisprudence. In keeping with this goal, subordination of tax penalties has long been considered appropriate by Congress and the courts.

The Act substantially re-codified § 93(j) as 11 U.S.C. § 726(a)(4), which provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed....

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

This provision gives priority to tax penalties, whether secured or unsecured. As a recodification of a prior provision, it seeks to insure equitable asset distribution. Penalties awarded above pecuniary loss would tend to thwart this policy because they would serve to reduce recovery by creditors.

## IV. DISCUSSION

Here, the IRS argues that there exists no specific provision, such as § 726, allowing subordination under Chapter 13 [1] and, that, in any event, Congress did not intend such a result in Chapter 13 cases. If this were true, the power of equitable subordination

would have been exercised inappropriately below.

The legislative history of the Act as a whole, does not support the IRS argument. Both in House Bill 8200 and in Senate Bill 2266, Section 507 of the proposed Act placed unsecured tax claim penalties "in compensation for actual pecuniary loss" sixth in the list of priority debt. Congress thereby demonstrated its concern that such tax claims be paid whether secured or unsecured.

However, the provision did not give priority to tax penalties which are other than payments for actual pecuniary loss. Therefore, a penalty in compensation for pecuniary loss is the functional equivalent of a claim. Pecuniary loss penalties are those in which the IRS is seeking to collect a tax but calls it a "penalty." Non-pecuniary loss penalties are those which are penal in nature. S.Rep. No. 95–989, 79, *reprinted in* U.S.Code Cong. & Admin.News at 5865 (1978).

Congress amended § 507 in 1984 (Pub.L. 98–353, Title III, §§ 350, 449, July 10, 1984, 98 Stat. 358, 374), but did not alter the language of this subsection. The amendment simply moved the tax penalty claim for pecuniary loss to the seventh priority position.

In view of Congress' intent to create a bankruptcy statute consistent with the predecessor Code, this omission is instructive. Because such penalties were not given priority under the old Code, they should not be deemed to have priority under the new Act without specific direction from Congress to that effect.

Chapter 7 does give priority to non-pecuniary loss tax penalties. Distribution, as required by § 726, takes place after payment of the claims given priority by § 507. Tax penalties are ranked seventh in the § 507 list of debt that debtor must pay. When read in this light, a Chapter 7 bankruptcy action allows for payment of tax penalties above actual pecuniary loss only

---

1. The recodification of § 93(j) represents a change in the law. It provides that a penalty not representing pecuniary loss be disallowed.

The current provision calls for the penalty to be subordinated only.

after ten other categories of debt are paid; after the trustee pays the seven priorities of § 507 and the three prior priorities of § 726. No provision comparable to § 726 exists in Chapter 13. One may logically conclude that Congress considered the provision for payment of such tax penalties as even less important in the Chapter 13 case than in the Chapter 7 case.

Chapter 7 provides for the payment of such penalties, because the old bankruptcy scheme allowed them to be subordinated. Thus, to ensure that bankruptcy courts do not engage in subordination of penalties in a liquidation action, Congress specifically disallowed it. That Congress refrained from drafting such a provision in the Chapter 13 case, simply means that it intended that the bankruptcy court deal with penalties in the traditional manner. Penalties may be subordinated when not in compensation for actual pecuniary loss. This is clear from the legislative history. The House Report 95–595 on the bill states that taxes, when fines or penalties, are never given priority.

Viewed in light of the debtor's obligations under Chapter 13 and the purpose of tax penalties above pecuniary loss the result is logical. In Chapter 7, assets are liquidated and debts are discharged. Creditors must satisfy themselves with their ratable share of the proceeds of the liquidation sale. Section 727(a)(8) limits the availability of discharge to protect creditors.

However, in Chapter 13 debtors must pay all, or a substantial part, of their debt obligations. Section 1328 allows debt to be discharged only after payment has been completed pursuant to the plan. Theoretically, the creditor receives greater protection when the debtor files under Chapter 13.

When the functions of the Chapters are coupled with the purpose of the imposition of penalties, the statutory scheme seems very sensible. As the debtor argues, agencies impose fines or penalties to deter wrongful conduct. However, in a bankruptcy context creditors are forced to share in the financial loss of the debtor. This explains why Chapter 7 makes payment of non-pecuniary loss penalties a low priority. Chapter 13 presents different considerations, since all debt should be paid.

The Act clearly furthers the policy that those guilty of wrongdoing should not be allowed to avoid penal sanctions by filing a petition for liquidation. Weintraub at ¶ 3.09[7]. Thus, Congress created a balancing of the competing interests of creditors interests and policy interests furthered by payment of penalties. To protect the interests of the party to whom a penalty is owed, the Act provides that a penalty is non-dischargeable to the extent that the underlying tax is non-dischargeable. 11 U.S.C. § 523(a)(7). This provision does not permit discharge of penalties above pecuniary loss anywhere in the Act. The bankruptcy court below did not discharge the penalties. Rather, it merely subordinated the debt to reduce the likelihood that the creditors would pay the penalties.

The IRS accurately argues that Congress did not consider taxes to be of a subordinated nature. See 124 Cong.Rec. 32,398 (September 28, 1978). However, a pre-petition penalty above pecuniary loss is not a tax. As the bankruptcy court recognized in In re Powe, 75 B.R. 387 (Bankr.M.D.Fla. 1987):

"it is quite evident that if an imposition of tax liability for unpaid taxes based on income are deemed to be penalties, the United States will never receive any payment of its tax claim in the Chapter 7 case and the priority accorded to the United States by § 507(a)(7) would be totally academic ..." Id. at 392.

A pre-petition penalty, however, does not constitute liability for unpaid taxes. Here, the IRS does not argue that the penalties in issue are pecuniary loss penalties. Rather, it is an amount over and above the actual unpaid tax liability. A debtor does not escape liability when non-pecuniary loss penalties are subordinated in a Chapter 13 action.

## V. CONCLUSION

The legislative history allows courts flexibility in applying the principle of equitable

subordination to cases contemplated by existing case law, but whose facts may be novel in some respect. The facts of this case, while differing from case law existing at the time of the Act's legislation, does not present an issue that the legislature did not contemplate. Therefore, the bankruptcy court below correctly subordinated the prepetition tax penalties which were the subject of the debtor's objection.

## ORDER

AND NOW, this 20th day of December, 1989, it is hereby ORDERED that the bankruptcy court's order in the above captioned matter is AFFIRMED. Judgment is hereby entered in favor of the appellee and against the appellant.