917 F.2d 115
 66 A.F.T.R.2d 90-5792, 59 USLW 2288, 90-2
USTC P 50,598,
24 Collier Bankr.Cas.2d 187, 20 Bankr.Ct.Dec. 1937
 In re BURDEN, Wilfred, H., a/k/a Burden, Wilfred, H., Jr.,
t/a Burden's Janitorial Service & Supply Company
v.
The UNITED STATES of America, Appellant.
 No. 90-1147.
 United States Court of Appeals,
Third Circuit.
 Argued July 31, 1990.
Decided Oct. 26, 1990.
 
 Robert W. Metzler (argued), Shirley D. Peterson, Gary R. Allen, Gary D. Gray, Tax Div., Dept. of Justice, Washington, D.C., for appellant.
 James L. Davis (argued), Paul R. Ober & Associates, Reading, Pa., for appellee.
 Before HIGGINBOTHAM, Chief Judge, and SCIRICA and ALITO, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This is a Chapter 13 bankruptcy case. The Internal Revenue Service ("IRS") appeals from the judgment of the District Court for the Eastern District of Pennsylvania, which affirmed the Bankruptcy Court's ruling that a claim for nonpecuniary loss tax penalties may be subordinated to the claims of other general unsecured creditors, absent a showing of misconduct by the government.[1] 109 B.R. 107 (1989).
 
 
 2
 Because the district court automatically subordinated the tax penalties without weighing the equities of the various claims, we will reverse and remand.
 
 I.
 
 3
 Wilfred H. Burden, debtor and appellee, was assessed federal income and employment taxes, related penalties, and interest for various tax periods from 1980 to 1985. When the debtor failed to pay all of the amounts assessed against him, the IRS filed four separate notices of tax lien.[2]
 
 
 4
 On June 30, 1987, the debtor filed for protection under Chapter 13 of the Bankruptcy Code. In response, on July 28, 1987, the IRS timely filed a proof of claim in the amount of $57,930.17, of which $51,903.32 was subsequently secured. Of the secured amount $10,655.64 was assessed for penalties and $18,862.68 for interest. The remaining unsecured portion of the claim includes $1,384.67 in penalties and $3,510.19 in taxes. The issue before us on appeal concerns the penalty portion (secured and unsecured) of the total liabilities, which amounts to $12,040.31.[3]
 
 
 5
 On March 30, 1989, the debtor filed a timely objection to the IRS' proof of claim. The parties were able to resolve all of the issues in contention raised by the debtor's objection except one, namely, that in its proof of claim, the IRS failed to subordinate the pre-petition penalties (totalling $12,040.31) to the claims of other general unsecured creditors. The parties did agree that only $52,000 in assets were available to compensate the secured creditors, some having interests prior to those of the IRS.
 
 
 6
 In response to the debtor's objection, on August 1, 1989, the bankruptcy court entered an order that modified the IRS' proof of claim. Pursuant to Sec. 510(c) of the Bankruptcy Code, the court subordinated the pre-petition penalties portion to the claims of other general non-subordinated unsecured claims. The IRS filed a timely appeal to the bankruptcy court's order. The district court affirmed the bankruptcy court's final order.
 
 
 7
 The IRS filed a timely appeal before this court contending that 1) equitable subordination does not permit the automatic subordination of nonpecuniary loss tax penalties; 2) Sec. 510(c) on its face precludes class subordination; 3) the invocation of equitable subordination requires a showing of inequitable conduct; 4) Sec. 510(c) requires a notice and fair hearing for all claims; and 5) the automatic subordination of nonpecuniary loss tax penalties would diminish the purpose and effect of such IRS penalties.
 
 
 8
 Our review of the district court's order affirming the bankruptcy court's order is plenary. See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-03 (3d Cir.1981).
 
 II.
 
 9
 The issues raised in this appeal require us to address the following concerns: 1) whether Sec. 510(c) permits equitable subordination of penalties; 2) whether automatic subordination of penalties is proper; and 3) whether creditor misconduct is a necessary prerequisite for subordination. The Supreme Court has recognized that "[i]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295, 307-08, 60 S.Ct. 238, 245-46, 84 L.Ed. 281 (1939).[4] The Ninth Circuit has held that the essential purpose of subordination "is to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." In re Westgate-California Corporation, 642 F.2d 1174, 1177 (9th Cir.1981) (quoting In re Kansas City Journal-Post Co., 144 F.2d 791, 800 (8th Cir.1944)); see In re Lockwood, 14 B.R. 374, 381 (E.D.N.Y.1981).
 
 
 10
 Prior to the enactment of the Bankruptcy Act of 1978, subordination of tax penalty claims did not occur because noncompensatory penalty claims owed to the government were specifically disallowed. See Simonson v. Granquist, 369 U.S. 38, 40, 82 S.Ct. 537, 538, 7 L.Ed.2d 557 (1962) (a congressional purpose of section 57(j)[5] is to bar all claims against a bankrupt except those based on "pecuniary" loss); In re Kline, 403 F.Supp. 974, 977 (D.Md.1975) ("claims for 'penalties' shall not be allowed against the bankrupt estate"), aff'd, 547 F.2d 823 (4th Cir.1977); 30 Stat. 561, amended by 11 U.S.C. Sec. 93(j), amended by 11 U.S.C. Sec. 724(a) (West Supp.1990). Section 510(c)(1) of the Bankruptcy Act of 1978 explicitly allows bankruptcy courts to reorder existing priorities among creditors "under principles of equitable subordination." See In re Virtual Network Services Corp., 902 F.2d 1246 (7th Cir.1990); In re Merwede, 84 B.R. 11 (D.Conn.1988).[6] However, whether section 510(c)(1) allows bankruptcy courts to subordinate nonpecuniary loss tax penalties is an issue of first impression in this circuit.[7] The Bankruptcy Act does not explicitly define the phrase "equitable subordination" and therefore it is necessary to draw inferences of congressional intent from the legislative history of the Act. Although numerous bankruptcy courts have considered this issue, only recently have Courts of Appeals considered whether Sec. 510(c)(1) permits equitable subordination of nonpecuniary loss tax penalties. See Schultz Broadway Inn v. United States of America, 912 F.2d 230 (8th Cir.1990); Virtual Network Services Corp., 902 F.2d at 1250. In Virtual Network Services Corp., the Seventh Circuit held that Sec. 510(c) empowers the bankruptcy court to equitably subordinate the IRS claim for nonpecuniary loss tax penalties to claims of other creditors in a Chapter 11 liquidation proceeding.[8] In reviewing the legislative history to determine Congressional intent, the Seventh Circuit concluded that "the committee reports are necessarily inconclusive as to the meaning of 'equitable subordination' as enacted in Sec. 510(c)(1)." Id. at 1248. However, the court considered statements of Representative Edwards and Senator DiConcini, sponsor and co-sponsor of the House and Senate bills, respectively,[9] in conjunction with the Second Circuit's holding in In re Stirling Homex Corp., 579 F.2d 206 (2d Cir.1978) cert. denied, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). In Stirling Homex Corp., which was decided prior to the enactment of the Bankruptcy Act of 1978, the Second Circuit explicitly adopted subordination of claims of defrauded shareholders who had acted wrongfully. 902 F.2d at 212-15. The stockholders in Stirling Homex were allegedly defrauded by the corporation when they purchased their stock certificates. However, the court did not decide whether the stockholders were creditors within the meaning of the Bankruptcy Act. Id. at 212. The court explicitly noted that it was proceeding on "the more narrow question whether it was inequitable for [the bankruptcy court] to subordinate the claims by the stockholders to those made by ordinary creditors" and it concluded that it was not. Id.[10]
 
 
 11
 Based on its review, the court in Virtual Services Network Corp. rejected the government's position that nonpecuniary loss tax penalty claims are not subject to equitable subordination under Sec. 510(c). Id. at 1248-49. The district court's reasoning in the case at bar is consistent with the Seventh Circuit's reasoning. However, the district court interpreted the legislative history of Sec. 726(a)(4), as opposed to Sec. 510(c)(1), to conclude that subordination of tax penalties has long been considered appropriate by Congress.[11] Section 726(a)(4), which applies to Chapter 7 actions, explicitly subordinates nonpecuniary loss tax penalties. The district court concluded that the legislative history allows courts flexibility in applying the principles of equitable subordination in Chapter 13 cases as well as in Chapter 7 cases.
 
 
 12
 The IRS contends in this case that there is no specific provision, such as 11 U.S.C. Sec. 726, allowing subordination of nonpecuniary loss tax penalties under Chapter 13, and that, in any event, Congress did not intend such a result in Chapter 13 cases. The debtor asserts that Congress intended the bankruptcy courts to develop the concept of equitable subordination and thereby to expand the traditional doctrine of subordination. Therefore, according to the debtor, the court has the power to subordinate nonpecuniary loss tax penalties in Chapter 13 cases.
 
 
 13
 We are persuaded by the Seventh Circuit's reasoning that the congressional statements and the legislative history of Sec. 510 indicates that Congress intended the courts to develop the principles of equitable subordination. Virtual Network Services Corp., 902 F.2d at 1249-50. Given this authority, we conclude that Sec. 510(c) permits bankruptcy courts to subordinate nonpecuniary loss tax penalties and therefore uphold the district court's determination that subordination is permitted pursuant to this section of the Act.
 
 
 14
 While we agree with the district court and the debtor that equitable subordination of nonpecuniary loss tax penalties is permissible, we also believe that Congress did not intend such a radical alteration in the equitable subordination doctrine as to permit automatic subordination simply because the claim is for nonpecuniary loss tax penalties. Such a major revision in the bankruptcy law would certainly warrant explicit direction from Congress. Since the legislation is silent on this issue, we must reject the contention that bankruptcy courts may automatically impose a harsh result without consideration of the equities of the claims.
 
 
 15
 In addition, the language of Sec. 510(c)(1) clearly permits subordination after notice and hearing. Where, as here, the language of the statute is plain and precise, it is conclusive of the statute's meaning absent "clear evidence that reading the language literally would thwart the obvious purposes of the Act." Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989). Accord Burlington No. R. Co. v. Okla. Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987); Amp Inc. v. U.S., 820 F.2d 612, 615 (3d Cir.1987). Therefore, we conclude that the district court erred as a matter of law by subordinating the IRS penalties without considering the equities involved in the various claims.
 
 
 16
 Our final concern is whether in determining the equities of the claims, a court can subordinate only when there has been a showing of bad faith on the part of the creditor--as was required prior to the enactment of the Bankruptcy Act of 1978. See In re Mobile Steel, 563 F.2d 692 (5th Cir.1977) (abuse of discretion to subordinate when conduct was not shown to be unfair to the bankrupt or its creditors).[12]
 
 
 17
 The IRS argued before the district court that there was a requirement of misconduct for equitable subordination. It argued that the Bankruptcy Act merely codified existing caselaw which prohibited subordination without a showing of inequitable conduct. Id. See also Comstock v. Group Investors, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911 (1948); Spach v. Bryant, 309 F.2d 886, 889 (5th Cir.1962). However, at oral argument, the IRS conceded that subordination pursuant to Sec. 510(c) would be proper without creditor misconduct, when there has been an ad hoc inquiry to determine the relative equities of the competing claims.[13]
 
 
 18
 The debtor contends that subsequent to the passage of the Act, the overwhelming majority of the bankruptcy courts which have analyzed subordination of tax penalties pursuant to Sec. 510(c)(1) have "provided for equitable subordination without making creditor misconduct a necessary prerequisite for its application." Virtual Network Services Corp., 902 F.2d at 1249. Accord In re Airlift, Intern., Inc., 97 B.R. 664, 670 (S.D.Fla.1989) (because of their nature, claims for tax penalties may be subordinated); In re Merwede, 84 B.R. 11, 13 (D.Conn.1988) (wrongful misconduct is no longer the exclusive basis for equitable subordination). See also In re Schultz Broadway Inn, Ltd., 89 B.R. 43 (W.D.Mo.1988) (creditor misconduct was not an issue where the court subordinated negligence penalties assessed by the IRS in a Chapter 11 case); In re Standard Johnson Co., Inc., 90 B.R. 41 (E.D.N.Y.1988) (no creditor misconduct where the court upheld debtor's objection to IRS proof of claim conferring priority status to pre-petition penalties); In re Patco Photo Corp., 82 B.R. 192 (E.D.N.Y.1988) (court granted debtor's motion to reclassify penalty and fines related pre-petition tax claims as general unsecured claims because they were punitive in nature); In re Mansfield Tire and Rubber Co., 80 B.R. 395 (N.D.Ohio 1987) (excise taxes determined to be penalties and subordinated in Chapter 11 case) (quoting In re Colin, 44 B.R. 806, 810 (S.D.N.Y.1984) (inequitable conduct is not the exclusive basis for subordination under section 510(c)). The court in Virtual Network Services Corp., also held that creditor misconduct is not a prerequisite for equitable subordination. We are persuaded by this overwhelming consistency in judgments rendered by the federal courts and conclude that creditor misconduct is not a prerequisite for equitable subordination.
 
 
 19
 In considering whether to subordinate nonpecuniary loss tax penalties, the district court must weigh the equities "on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor claiming parity among other unsecured general creditors." Virtual Network Services Corp., 902 F.2d at 1250. See also Schultz Broadway Inn v. United States of America, 912 F.2d at 232-34 (creditor misconduct is not a prerequisite to equitable subordination but subordination must be considered on case-by-case basis).
 
 
 20
 Our holding today does not subject the government to any requirement that is not also a requirement for other creditors seeking a non-subordinated status. The penalties sought by the IRS or by any other creditor may be subordinated, in the proper case, by the exercise of the court's equitable jurisdiction. If, as the district court suggests, the courts were free to subordinate a class of claims as a matter of law, then the notice and hearing requirement of Sec. 510(c) would be nullified in any instance where the claimholder does not dispute that its claim is of a particular type. We believe that the notice and hearing requirement calls on courts to explore the particular facts and circumstances presented in each case before determining whether subordination of a claim is warranted.
 
 III.
 
 21
 While we agree with the district court that the legislative history allows courts flexibility in applying the principle of equitable subordination, there is no indication that Congress contemplated that nonpecuniary loss tax penalties would be subordinated automatically. To summarize, we conclude that Sec. 510(c) permits equitable subordination of nonpecuniary loss tax penalties; in determining whether to subordinate courts must balance the equities of the various claims;[14] and creditor misconduct is not a prerequisite for equitable subordination. Therefore, we will reverse and remand to the district court for further proceedings consistent with this opinion.
 
 
 22
 ALITO, Circuit Judge, concurring in part and dissenting in part.
 
 
 23
 I concur in the judgment of the Court that the district court decision automatically subordinating nonpecuniary loss tax penalties must be reversed and that the case must be remanded for a hearing. I disagree, however, regarding the legal standard that should be applied on remand. The majority holds that the district court on remand may subordinate nonpecuniary loss tax penalties without proof of inequitable conduct by the government if a weighing of competing equities suggests that subordination is appropriate. This apparently means that a nonpecuniary loss tax penalty not associated with any inequitable government conduct may be subordinated to other unsecured claims provided these claims are not themselves inequitable. In my view, this holding, which treats nonpecuniary loss tax penalties less favorably than other categories of unsecured claims, is incorrect.[1]
 
 
 24
 As the majority notes, 11 U.S.C. Sec. 510(c)(1) provides that a bankruptcy court, after notice and a hearing, may subordinate all or part of one claim or interest to all or part of another claim or interest "under principles of equitable subordination." The critical phrase--"under principles of equitable subordination"--was clearly meant to codify the principles of equitable subordination worked out in the case law. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Midlantic National Bank v. N.J. Dept. of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986). This rule should be followed "with particular care in bankruptcy codifications" (id.).
 
 
 25
 The legislative history of Section 510 points unmistakably to the same conclusion. Following the revision of Section 510 in conference, Representative Edwards, sponsor of the House bill, and Senator DeConcini, co-sponsor of the Senate bill, stated on the floor: "It is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle." 124 Cong.Rec. 32416 (1978) (Rep. Edwards); 124 Cong.Rec. 34016 (1978) (Sen. DeConcini). Similarly, the report on the Senate bill, from which the phrase "principles of equitable subordination" was taken, stated that "[t]hese principles are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct." S.Rep. No. 95-989, 95th Cong., 2d Sess. 74, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5860. Likewise, the report on the House bill, which permitted subordination "on equitable grounds," explained that this section was intended to codify case law. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 359, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6315.
 
 
 26
 What, then, did "principles of equitable subordination" mean in the case law when the new bankruptcy code was adopted in 1978? As the Fifth Circuit explained in an authoritative decision surveying the cases on the eve of the adoption of the new code, those principles required, among other things, that "[t]he claimant must have engaged in some type of inequitable conduct." In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir.1977). See also, e.g., In re Ahlswede, 516 F.2d 784, 788 (9th Cir.1975), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); Farmers Bank v. Julian, 383 F.2d 314, 323 (8th Cir.1967), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); In re Credit Industrial Corporation, 366 F.2d 402, 408 (2d Cir.1966).
 
 
 27
 The conspicuous paucity of contrary authority in the decisions addressing the subordination of nonpecuniary loss tax penalties is telling. Indeed, these decisions identify only one pre-1978 case that purportedly permitted equitable subordination without proof of inequitable conduct by the claimant. In that case, In re Stirling Homex Corp., 579 F.2d 206 (2d Cir.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), the Second Circuit affirmed the subordination of the claims of allegedly defrauded stockholders. As stockholders, these claimants would not have been entitled to any of the proceeds resulting from liquidation, but by suing they sought to achieve parity with the general unsecured creditors. Although the Second Circuit did not explicitly label their conduct inequitable, its decision was clearly based on the view that their conduct was designed to achieve an inequitable result that should not be permitted. Thus, even if In re Stirling Homex Corp. was a departure from prior precedent, it did not abandon the concept that equitable subordination must be based on the conduct of the individual claimant. At most, In re Stirling Homex Co. represented an incremental change in the established doctrine.
 
 
 28
 By contrast, the holdings of the district court and the majority in the present case represent a sharp break from the established doctrine codified in Section 510(c)(1). The holdings of the district court and the majority do not rest on the claimant's conduct but on the view that one category of unsecured claims (those representing actual pecuniary loss) should be treated more favorably than another category of unsecured claims (those representing nonpecuniary loss tax penalties). Decisions about the treatment of categories of claims in bankruptcy proceedings, however, are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination, as codified in Section 510(c)(1).
 
 
 29
 The sequence of events leading to the enactment of Section 510 also suggests that Congress did not intend to authorize the subordination of penalty claims under the doctrine of equitable subordination. In the Bankruptcy Commission's proposed statute, Section 4-406(a)(1) subordinated all penalty claims, while Section 4-406(c) codified the court's power of equitable subordination. H.R.Doc. No. 93-137, pt. II, 93d Cong., 1st Sess. 115-117 (1973). Bills containing provisions closely patterned after Section 4-406 of the Commission's recommendation were then introduced in the House and Senate. See, e.g., H.R. 10792, 93d Cong., 1st Sess., sec. 4-406 (1973); H.R. 31, 94th Cong., 1st Sess., sec. 4-406 (1975); S. 236, 94th Cong., 1st Sess., sec. 4-406 (1975). After hearings, however, new bills following the different approach to subordination contained in the present code were introduced. Under that approach, although the general power of equitable subordination was still recognized (11 U.S.C. Sec. 510(c)(1)), the subordination of penalties was restricted to proceedings under chapter 7 (11 U.S.C. Sec. 726). This sequence of events strongly suggests that Congress did not want penalties to be subordinated on a wholesale basis in proceedings under chapters 9, 11, and 13. Yet the majority's position seems very likely to bring about precisely that result.
 
 
 30
 Contrary to the interpretation contained in some decisions permitting the equitable subordination of nonpecuniary loss tax penalties (see, e.g., Schultz Broadway Inn v. United States, 912 F.2d 230, 232-33 (8th Cir.1990); In re Virtual Network Services Corp., 902 F.2d 1246, 1248 (7th Cir.1990)), the previously mentioned statements made on the floor of Congress by Representative Edwards and Senator DeConcini do not justify any fundamental departure from established case law. In an identical passage in both statements, Representative Edwards and Senator DeConcini, after stating that section 510(c)(1) was meant to "follow existing case law," added that "development" of the principles of equitable subordination would be "[left] to the courts." This "development," however, while very likely meant to permit the kind of incremental change effected by In re Stirling Homex, cannot include a fundamental break from "existing case law" such as that adopted by the district court or the majority in this case.
 
 
 31
 Nor can the reference to "a penalty" in these same floor statements justify the holding of the district court or the majority. In the passage noted above, Representative Edwards and Senator DeConcini stated:
 
 
 32
 To date, under existing case law a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.
 
 
 33
 124 Cong.Rec. 32416 (1978) (Rep. Edwards); 124 Cong.Rec. 34016 (1978) (Sen. DeConcini) (emphasis added).
 
 
 34
 The meaning of this reference to "a penalty," however, is unclear. Representative Edwards and Senator DeConcini were describing equitable subordination "under existing case law," and "under existing case law," as previously noted, penalties were not "susceptible to subordination." Since it is impossible to determine what Representative Edwards and Senator DeConcini meant when they referred to "a penalty," that reference should not control the interpretation of the statute. Moreover, whatever Representative Edwards and Senator DeConcini had in mind, a single, ambiguous reference to "a penalty" in their floor statements could not have alerted the other members of Congress that the new code would fundamentally change the "principles of equitable subordination" recognized by the courts. A fleeting reference in floor statements--even authoritative floor statements by sponsors of the proposed legislation--should not be given controlling weight.
 
 
 35
 In conclusion, the claims at issue in the present case should be subordinated on remand only if there is evidence of conduct by the government in this particular case that makes subordination equitable.
 
 
 
 [1]
 Nonpecuniary loss tax penalty claims are, in this case, claims by the IRS to collect additions to tax from the debtor for failure to make a reasonable attempt to pay taxes or delinquent payment of taxes. See 26 U.S.C. Sec. 6653 (West 1989), for a description of tax penalties due to negligence and fraud
 The district court's opinion states that "the bankruptcy judge ... subordinated the pre-petition penalties portion of the IRS's claim to a status of general non-subordinated unsecured claims." 109 B.R. at 108. This is a variation from the language of the bankruptcy court's order which states that "the penalty portion is hereby subordinated to the claims of other general unsecured creditors pursuant to 11 U.S.C. Sec. 510." Bankruptcy Court Order, Appendix at 23.
 
 
 [2]
 The notices of tax lien were filed on August 31, 1983, May 10, 1984, July 15, 1985 and August 1, 1985
 
 
 [3]
 The taxes and interest portions of the IRS claim are not at issue in this case. Before this Court, the IRS challenges only the District Court's disposition of its claim for pre-petition penalties
 
 
 [4]
 In Pepper v. Litton, the Court held that the bankruptcy court has equitable power to subordinate a claim against a fraudulent fiduciary, "[o]therwise ... exploitation would become a substitute for justice." 308 U.S. at 312, 60 S.Ct. at 248
 
 
 [5]
 In the Bankruptcy Act of 1898, Sec. 57(j) provided that a claim for a nonpecuniary loss penalty could not be allowed. See 30 Stat. 561, amended by 11 U.S.C. Sec. 93(j), amended by 11 U.S.C. Sec. 724(a) (West Supp.1990); In re Schultz Broadway Inn, Ltd., 89 B.R. 43, 44 (W.D.Mo.1988), aff'd, 1989 WL 61867 (W.D.Mo. Apr. 26, 1989)
 
 
 [6]
 11 U.S.C. Sec. 510(c)(1) provides in pertinent part:
 (c) Notwithstanding subsections (a) and (b) of this section, after notice and hearing, the court may--
 (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or part of an allowed interest to all or part of another allowed interest....
 
 
 [7]
 In a case that did not involve tax penalties, a bankruptcy court in this circuit has interpreted Sec. 510(c) to permit subordination. See In re Americana Apparel, Inc., 55 B.R. 160 (E.D.Pa.1985) (court subordinated a claim owed an insider for consulting fees)
 
 
 [8]
 Virtual Network Services (VNS), a long-distance telephone service company, filed Chapter 11 bankruptcy petition. As the debtor in possession, VNS sold most of its operating assets and filed an amended reorganization plan to liquidate the company
 The IRS filed a proof of claim for employment and withholding taxes and pre-petition tax penalties. The IRS identified the tax penalties as a general unsecured claim. VNS objected, contending that the IRS' non-pecuniary tax penalty should be subordinated to the other general unsecured creditors based on principles of equitable subordination. The bankruptcy court ruled in favor of the IRS but the district court reversed. The Seventh Circuit affirmed the district court. 902 F.2d at 1250.
 
 
 [9]
 As the sponsor and co-sponsor of the Bankruptcy Reform Act of 1978, Representative Edwards and Senator DiConcini were recorded as legislative leaders on the matter. Their statements were intended to inform members of Congress of the eight years of revisions leading up to the first substantial reform of the bankruptcy laws in forty years. See Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6436, 6505
 
 
 [10]
 The court did not resolve whether subordination would be proper without creditor misconduct
 
 
 [11]
 Section 726(a)(4) specifically provides for automatic subordination in Chapter 7 cases:
 (a) Except as provided in section 510 of this title, property of the estate shall be distributed--
 ....
 (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim....
 11 U.S.C. Sec. 726(a)(4) (West 1979).
 
 
 [12]
 But see In re Stirling Homex Corp., 579 F.2d 206 (prior to the Bankruptcy Act of 1978, a broad class of claims of allegedly defrauded stockholders was automatically subordinated to the claims of general unsecured creditors)
 
 
 [13]
 The tape of the oral argument discloses that the following colloquy ensued between the court and counsel for the IRS:
 THE COURT: So what you are talking about is that the government now takes the position that Virtual is correct--that you can have a subordination of a nonpecuniary loss penalties involving tax penalties in an IRS claim but you can't have an automatic one? Is that the government's position?
 COUNSEL: That is the government's position ... At one time the government had argued in the courts below that it was a prerequisite of misconduct on the part of the government before you could have subordination.
 THE COURT: So that's the only position--so you in effect before us withdraw the broader based argument you've made and you are now saying that the only thing which you want us to consider is whether you can have subordination of a nonpecuniary loss tax penalty of an IRS claim, would be whether it can be automatic or whether it has to be looked at on an ad hoc basis?
 COUNSEL: Essentially your honor, yes.
 THE COURT: And if it's looked at at an ad hoc basis, then that is permissible within the breadth of the statute.
 COUNSEL: Yes, your honor.
 THE COURT: So therefore the most that you would be entitled to in this case would be a remand for an inquiry as to whether there should be at an ad hoc subordination rather than the automatic.
 COUNSEL: Your honor, I would essentially agree with your analysis if one thing had been different in this case, and this is why it is unusual. Here, the debtor, not any creditor, came in and said we want the claim subordinated. So at the point in time no creditor has come in and shown the equities of this claim. So essentially we see at this point in time, we see a need for reversal.
 
 
 [14]
 Implicitly, the dissent seems to assume that the government is willing to breach its obligation to collect funds due by its "concession at oral argument that nonpecuniary loss tax penalties may be subordinated on a case-by-case basis without inequitable conduct." Dis. op., at 121 n. 1; see supra note 13. The government's concession is adequate for the majority. Furthermore, although obviously unintentionally, the dissent hypothesizes that the "majority's position seems very likely" to cause "penalties to be subordinated on a wholesale basis in proceedings under chapters 9, 11, and 13." Id. at 123. We respectfully submit that this hypothesized result is a result we do not intend. In fact, our position could not be stated in clearer language than our explicit direction to the bankruptcy and district courts to "explore the particular facts and circumstances presented in each case before determining whether subordination of a claim is warranted" and that "in determining whether to subordinate courts must balance the equities of the various claims...." Supra at 120. We also respectfully disagree with the dissent in its characterization that this is "a new procedure." Dis. op. at 121 n. 1. As we noted above, Sec. 510(c) requires notice and hearing prior to the subordination of any class of claims. See supra n. 6 and at p. 119. We also noted that "[o]ur holding today does not subject the government to any requirement that is not also a requirement for other creditors seeking non-subordinated status." Id. at 120. Accordingly, we do not think we have prescribed any procedure that is not already "prescribed by law." Dis. op. at 121 n. 1
 
 
 [1]
 The majority relies in part upon the government's concession at oral argument that nonpecuniary loss tax penalties may be subordinated on a case-by-case basis without proof of inequitable conduct (Maj. op., at 119 & n. 13, 120 n. 14.), but the majority does not base its decision on that concession alone. I believe this is the proper approach. By adopting the new position advanced at oral argument, the government not only gave up what it had argued in its briefs was a legal right (i.e., the right to be free from equitable subordination absent proof of inequitable conduct), it also asserted that the bankruptcy courts must perform a new procedure (i.e., conduct a hearing involving a comparison of the competing equities) whenever equitable subordination is sought. This court should not require the bankruptcy courts to follow this new procedure unless it is prescribed by law. Therefore, despite the government's concession, this court must decide for itself whether this procedure is necessary