

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2003

# Citicorp Venture Cap v. Comm Creditors

Precedential or Non-Precedential: Precedential

Docket 02-1815

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Citicorp Venture Cap v. Comm Creditors" (2003). *2003 Decisions.* Paper 681.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/681

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 02-1815, 02-1905

———————

CITICORP VENTURE CAPITAL, LTD., a New York
Corporation,

Appellant No. 02-1815

v.

COMMITTEE OF CREDITORS HOLDING UNSECURED
CLAIMS, AND COMMITTEE OF CREDITORS HOLDING
UNSECURED CLAIMS AS ESTATE REPRESENTATIVE OF
PAPERCRAFT CORPORATION

———————

CITICORP VENTURE CAPITAL, LTD., a New York
Corporation,

v.

COMMITTEE OF CREDITORS HOLDING UNSECURED
CLAIMS, AND COMMITTEE OF CREDITORS HOLDING
UNSECURED CLAIMS AS ESTATE REPRESENTATIVE OF
PAPERCRAFT CORPORATION

Appellant No. 02-1905

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 00-cv-02181)
District Judge: The Honorable Robert J. Cindrich

———————

Argued December 16, 2002

BEFORE: NYGAARD, ALITO, and RENDELL,
*Circuit Judges.*

(Filed March 19, 2003)

Lawrence J. Slattery, Esq. (Argued)
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY 10178

Amy M. Tonti, Esq.
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

   *Counsel for Appellant/Cross
   Appellee*

Philip E. Beard, Esq.
Stonecipher, Cunningham, Beard
 & Schmitt
125 First Avenue
Pittsburgh, PA 15222

Stephen M. Ray, Esq. (Argued)
Stutman, Treister & Glatt
3699 Wilshire Boulevard, Suite 900
Los Angeles, CA 90010

   *Counsel for Appellee/Cross
   Appellant*

## OPINION OF THE COURT

NYGAARD, *Circuit Judge*:

   This case arises out of the Chapter 11 filing of Papercraft Corporation and the subsequent litigation. Here, in our second review of determinations made by the Bankruptcy Court and the District Court, we must assess justifications for the subordination of several of Citicorp Venture

Capital's ("CVC") claims, and we must evaluate the accompanying calculations. First, CVC argues that the District Court erroneously upheld the Bankruptcy Court's subordination of certain administrative costs and professional fees. Second, CVC contends that the District Court erroneously upheld the Bankruptcy Court's subordination of CVC's claim by an additional amount incurred during a delay in the plan process. Third, CVC asserts that the finding that CVC made a profit on its note purchases is error. Finally, in a cross appeal, the Committee of Creditors Holding Unsecured Claims and Committee of Creditors Holding Unsecured Claims as Estate Representative of Papercraft Corporation (the "Committee") argues that the District Court erred in reducing the Bankruptcy Court's equitable subordination remedy on account of lost interest income. We hold that the "American Rule" should not be applied to the subordination of the administrative and professional costs, and that the District Court's findings are not clearly erroneous. We will affirm.

## I. Background

In 1991, an informal committee of Papercraft creditors and Papercraft agreed to a restructuring plan known as the "BDK plan," which was to be filed in conjunction with a voluntary Chapter 11 petition. The creditors' claims against Papercraft would be converted into "BDK units," consisting of stock and bonds issued by the new venture, in proportion to an estimated value of such units. Papercraft's directors, including CVC, approved the BDK plan, and the Chapter 11 petition and the BDK plan were filed.

The Committee commenced litigation, alleging that CVC, while an insider and fiduciary of Papercraft, attempted to take control of Papercraft's assets and reap significant profit at the expense of other creditors by withdrawing its support for the BDK plan and offering a competing plan, secretly purchasing $60,849,299.10 in claims against Papercraft for the discounted amount of $10,553,541.88, and delaying confirmation of the original plan. The Committee asserted that because CVC breached its fiduciary duty to Papercraft and Papercraft's creditors by

engaging in such self-dealing, CVC's claims should be equitably subordinated pursuant to § 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c).

The Bankruptcy Court issued an October 12, 1995, Memorandum Opinion and Order, finding that CVC's purchases at a discount, without disclosure, while an insider, constituted breaches of CVC's fiduciary duty to Papercraft and its creditors. *In re Papercraft Corp.*, 187 B.R. 486, 498-99 (Bankr. W.D. Pa. 1995). The Bankruptcy Court limited CVC's allowed claim to the $10,553,541.88 price, and held that further subordination of CVC's claims pursuant to the principles of equitable subordination codified at 11 U.S.C. § 510(c) was not appropriate because the Bankruptcy Court was already limiting CVC's allowed claim to the amount it paid for such claim. *Id.* at 501-02.

On appeal, the District Court affirmed the Bankruptcy Court's factual findings that CVC breached its fiduciary duties, acted inequitably, caused injury to Papercraft and its creditors and gained an unfair advantage. *In re Papercraft Corp.*, 211 B.R. 813 (W.D. Pa. 1997). However, the District Court remanded the case to the Bankruptcy Court for a further finding on the amount CVC's claims should be subordinated beyond the amount paid for such claims, if at all, pursuant to the principles of equitable subordination. *Id.* at 827. Both parties appealed.

We affirmed the District Court's opinion, finding that CVC violated its fiduciary duty in a number of significant respects and that CVC's misconduct caused harm justifying subordination. *In re Papercraft Corp.*, 160 F.3d 982, 988-90 (3d Cir. 1998). We explicitly stated that the findings of fact "make this a paradigm of inequitable conduct by a fiduciary as that concept has been developed in the case law, and we believe that further elaboration is not required." *Id.* at 987. We explained that,

> Further subordination may be appropriate, but only if supported by findings that justify the remedy chosen by reference to equitable principles. . . . While the bankruptcy court held, with record support, that the delay between the filing of the petition and the filing of the disclosure statement was not attributable to CVC's

> machinations, it made no similar finding with respect to the period of delay between the filing of the disclosure statement and confirmation of the BDK plan. Moreover, while the bankruptcy court found "no evidence that CVC engaged in conduct designed to delay the plan process," if CVC's pursuit of its own interest in fact resulted in delay of the confirmation, we do not read that finding as inconsistent with subordination based on injury resulting from that delay. On remand, the bankruptcy court should consider whether the record supports the proposition that non-selling creditors suffered loss as a result of a delay in confirmation caused by CVC advocacy of its competing plan and objections to the BDK plan.

*Id.* at 991-92. Our mandate to the Bankruptcy Court was clear: determine whether the record supports the additional subordination of CVC's claims.

On remand, the Bankruptcy Court found three kinds of economic harm to non-selling noteholder creditors: (1) the quantifiable monetary harm that resulted from the delay in confirming the plan; (2) the harm that resulted from the uncertainty over the amount of CVC's claim distribution; and (3) the harm that resulted from the delay in fully implementing the confirmed 1991 plan that can be measured by the professional fees and expenses of three courts and five proceedings. *In re Papercraft Corp.*, 247 B.R. 625, 628 (Bankr. W.D. Pa. Apr. 20, 2000). The Bankruptcy Court held, therefore, that CVC's recovery would be further subordinated by (1) $1,248,000 for additional administrative expenses incurred during the four-month delay; (2) $956,250 for interest and dividends lost by creditors during the delay; and (3) $2,974,373.15 for professional fees and expenses incurred and/or paid by the Estate or BDK through April 30, 2000.[1] *In re Papercraft Corp.*, 253 B.R. 385, 390 (Bankr. W.D. Pa. Sep. 21, 2000).

---

1. The Bankruptcy Court also held that CVC's recovery would be further subordinated by $4,750 in United States Trustee fees incurred and/or paid by the Papercraft bankruptcy estate from the date of confirmation through May 2, 2000. 247 B.R. at 630.

The District Court affirmed the Bankruptcy Court's decision, except that it reduced the lost interest income component of the subordination from $956,250 to $50,123.45. Memorandum Order at 36. CVC filed a timely appeal.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over the appeal below pursuant to 28 U.S.C. § 158(a) and appellate jurisdiction in accordance with Local Bankruptcy Appellate Rule 8007.1. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.

We exercise plenary review over legal determinations of a district court sitting as an appellate court in a bankruptcy proceeding. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). We may only overturn factual findings, however, if they are "clearly erroneous." *Id*; Fed. R. Bankr. P. 8013. We must accept the District Court's factual findings "unless they are 'completely devoid of a credible evidentiary basis or bear[ ] no rational relationship to the supporting data.' " *Moody v. Security Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992) (citation omitted).

## III. Discussion

First, CVC argues that the Bankruptcy Court violated the American Rule by subordinating the attorneys' fees. We disagree.

The expression of the American Rule is found in *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, where the Supreme Court explained that, "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." 421 U.S. 240, 247 (1975). There are, however, numerous exceptions to this rule. An element of all American Rule exceptions is a determination that the litigant "prevailed" and should be awarded attorneys' fees. For example, 42 U.S.C. § 1988 was enacted with the express intent of negating the effect of the *Alyeska* decision in statutory civil rights cases. 1976 U.S.C.C.A.N.

5908-09 ("[T]he purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline* . . . ."). Under § 1988, a party must show it "prevailed" in the underlying action.

The District Court affirmed the Bankruptcy Court's subordination of attorneys' fees, explaining:

> The Committee is not asking for the payment of attorneys' fees as such. The fees and expenses at issue depleted funds that otherwise would have been available to creditors but for CVC's misconduct in breaching its fiduciary duty. To ensure the distribution creditors should have received absent CVC's misconduct, it is necessary to restore the Estate's funds 'by subordinating CVC's share of distribution by the amount of fees and expenses incurred by professionals who are to be paid from estate assets that would not have been incurred but for CVC's breach of its fiduciary duty.'

*In re Papercraft Corp.*, Memorandum Order *11 (W.D. Pa. February 20, 2002). We agree with the District Court's logic.

In the exercise of its powers as a court of equity, the bankruptcy court may subordinate claims for cause, applying traditional principles of equitable subordination. 11 U.S.C. § 510(c); *Pepper v. Litton*, 308 U.S. 295, 307-11 (1939); *Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 322 (1939); *see also Comstock v. Group of Institutional Investors*, 335 U.S. 211, 229 (1948) (narrowing the application of equitable subordination to situations in which bad faith by the claimant is found). Although § 510(c) codifies the doctrine of equitable subordination, it does not detail the requirements of such subordination. Instead, it merely states that the doctrine is to be applied "under the principles of equitable subordination," and the legislative history states that Congress intended that the courts develop these principles. 124 Cong. Rec. 32,398 (1978) (statement of co-sponsor Rep. Edwards); 124 Cong. Rec. 33,998 (statement of co-sponsor Sen. DeConcini); *Burden v. United States*, 917 F.2d 115, 118 (3d Cir. 1990).

The doctrine of equitable subordination is remedial, and the goal " 'is to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results.' " *Burden*, 917 F.2d at 117 (citation omitted); *see also In re Papercraft Corp.*, 160 F.3d 982, 991 (3d Cir. 1998) (stating that the purpose of equitable subordination is "to compensate in a manner that will permit a . . . remedy to the injury that has been suffered by those [creditors] who will benefit from the subordination"). " '[T]he bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate.' " *Burden*, 917 F.2d at 117 (quoting *Pepper*, 308 U.S. at 307-08). The inequitable conduct may arise out of any unfair act by the creditor as long as the conduct affects the bankruptcy results of the other creditors. *Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1997). Because equitable subordination is remedial rather than penal, a claim should be equitably subordinated only to the extent necessary to offset the harm suffered by the debtor and its creditors as a result of the inequitable conduct. *Mobile Steel*, 563 F.2d at 701. A New York bankruptcy court has eloquently stated:

> The remedy of equitable subordination must remain sufficiently flexible to deal with manifest injustice resulting from the violation of the rules of fair play . . . . 'where ingenuity spawns unprecedented vagaries of unfairness, [bankruptcy courts] should not decline to recognize their marks, nor hesitate to turn the twilight for [offending claimants] into a new dawn for other creditors.'

*In re Teltronics Servs., Inc.*, 29 B.R. 139, 172 (Bankr. E.D.N.Y. 1983) (citations omitted). We hold that because the Bankruptcy Court subordinated attorneys' fees pursuant to its equitable powers, the American Rule is not implicated. The Bankruptcy Court did not award a money judgment for attorneys' fees to penalize CVC. Rather, the Bankruptcy Court analyzed the record facts, found specific damages, and used its equitable powers to return the non-selling creditors to the position they would have been in had CVC not acted inequitably.

We directed the Bankruptcy Court to make findings as to the amount of CVC's claims that should be subordinated pursuant to the principles of equitable subordination, and to identify specific harm resulting from CVC's wrongdoing. *In re Papercraft Corp.*, 160 F.3d at 991. The Bankruptcy Court did so, and concluded that CVC's inequitable conduct justifies subordination of attorneys' fees. We hold that the finding is not clearly erroneous.

At trial, the Bankruptcy Court stated that "none of these litigation costs would have been incurred" but for CVC's inequitable conduct, 5 app. at 1364, and that "some reasonable litigation costs may actually be a direct consequence of CVC's activities in this case." 5 app. at 1365. The Bankruptcy Court found that, but for CVC's inequitable conduct, the Committee would not have incurred such substantial fees and costs. *In re Papercraft Corp.*, 247 B.R. at 628; 28 app. at 8004-05. The Bankruptcy Court analyzed the depletion of available funds in the reorganized entity, and determined that the economic harm is directly attributable to CVC's inequitable actions. *In re Papercraft Corp.*, 247 B.R. at 628; 29 app. 8326. The Bankruptcy Court also found that the fees and costs related to the litigation were a "third type of economic harm caused by CVC's undisclosed claims purchasing." *In re Papercraft Corp.*, 247 B.R. at 631. The amount of attorneys' fees does not include all litigation costs of the Committee. Rather, more than $700,000 is deducted from the attorneys' fee award for fees and costs that are unrelated to CVC's inequitable conduct. 29 app. 8211-48.

CVC's inequitable conduct includes repeatedly litigating issues that were decided against it by our earlier decision, as well as earlier decisions of the District Court and the Bankruptcy Court. For example, in this case, CVC has incessantly relitigated the issue of whether it profited from its illegal claims trading, even though this issue had already been decided against it in the District Court, and reviewed by us. *In re Papercraft Corp.*, 165 B.R. 980, 983-84 (Bankr. W.D. Pa. 1994); *In re Papercraft Corp.*, 187 B.R. 486, 492, 498-99 (Bankr. W.D. Pa. 1995); *In re Papercraft Corp.*, 211 B.R. 813, 825 n.12 (W.D. Pa. 1997); *In re Papercraft Corp.*, 160 F.3d 982, 990-91 (3d Cir. 1998). Also,

in the briefs filed with the Bankruptcy Court on remand, 29 app. 8133-87, CVC attempted to relitigate that it did not usurp a corporate opportunity, even though all three courts had already found against CVC on this issue in previous *In re Papercraft Corp.* decisions. 160 F.3d at 987-88; 211 B.R. at 820, 824-26; 187 B.R. at 498-99. Finally, CVC's collateral proceedings, for which CVC only had standing because it illegally purchased claims against Papercraft, were aimed at preventing the reorganized debtor from engaging in a value-enhancing sale transaction, and depleted monies that would have otherwise been available to the creditors. 29 app. 8216-17, 8245-46.

The Bankruptcy Court also determined that the testimony of CVC's representatives during the litigation was not credible. *In re Papercraft*, 187 B.R. at 493 n.3 (finding that all other credible testimony and evidence shows that the testimony of CVC's Saleem Muqaddam is false); *id.* at 497 (dismissing the testimony of CVC's William Comfort, which contradicted other evidence); *id.* (disbelieving testimony of Muqaddam). Each of these instances of inequitable conduct resulted in legal fees and costs that decreased the funds available the non-selling creditors.

The Bankruptcy Court spent a substantial amount of time and effort considering the narrow issue of whether to include the professional fees and expenses in the subordination, 28 app. 8004-05; 29 app. 8288-335, and ruled on the issue in two written opinions. *In re Papercraft Corp.*, 247 B.R. at 631; *In re Papercraft Corp.*, 253 B.R. at 387-90. We conclude that the Bankruptcy Court found facts sufficient to establish the egregious conduct warranting subordination of CVC's claims, and those facts are not clearly erroneous. Although the pursuit of one's legal rights may not be grounds for equitable subordination, protracted and unjustified litigation tactics that harm the estate by causing it to incur fees may justify subordination. The Bankruptcy Court has been involved in overseeing this litigation for a decade and has had the best opportunity to observe first hand CVC's conduct and evaluate its motives. We are hard-pressed to disagree with its determinations based on the extensive record and proceedings before it, and its obvious familiarity with what we previously termed CVC's "machinations."

We reject CVC's other two arguments, as well as the Committee's argument on cross-appeal.

First, we conclude that the District Court did not err by holding that CVC was responsible for all fees incurred during a delay in the plan process. In our previous decision, we indicated that CVC's actions could have led to the delay in the BDK Plan's confirmation:

> Without limiting the inquiry of the bankruptcy court in any way, we note that there is evidence which would support a finding that the non-selling Papercraft creditors suffered injury from CVC's attempt to control the reorganization. . . . [I]f CVC's pursuit of its own interest in fact resulted in delay in the confirmation, we do not read that finding as inconsistent with subordination based on injury resulting from that delay.

*In re Papercraft*, 160 F.3d at 991-92. The Bankruptcy Court evaluated the evidence, and found ample support to establish that CVC's conduct delayed the plan process by at least four months, and that CVC's intent was to benefit itself over and above other creditors to whom it owed a fiduciary duty not to self-deal. *In re Papercraft*, 247 B.R. at 628. We have determined that the Bankruptcy Court's findings are not clear error.

Second, we conclude that the District Court did not err by affirming the Bankruptcy Court's calculation of CVC's profit. CVC argues that because it could only have realized a profit on the claim purchases if the cash equivalent of the BDK Units that it could receive under the BDK Plan exceeded the $10.5 million that CVC paid for the claims, the calculation must be the fair market value of those BDK Units. More than sufficient evidence demonstrates that the Bankruptcy Court did not err by valuing CVC's profit based on the reorganization value at the time of the BDK Plan confirmation. All of the creditors, including CVC, were to receive BDK Units on an equal basis, determined by their proportional share of interests in the reorganized entity, and we uphold the District Court's affirmation of the Bankruptcy Court's calculations.

Finally, the Committee argues that the District Court erred by reducing the subordination on account of lost interest income from $956,250 to $50,123. This argument is meritless. Because there was a four-month delay in the issuance of the debt securities, the Bankruptcy Court came to the $965,250 figure by multiplying the $239,062 in monthly interest on all the debt securities by four. The District Court correctly noted that the securities were ten-year notes, which would provide the Committee ten years of interest regardless of when they were issued. Mem. Order (Feb. 20, 2002), at 24-25. We therefore conclude that the District Court did not err by calculating the lost interest by a four-month delay of the ten years of interest.

For the foregoing reasons, we will affirm the judgment of the District Court.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*